# WILLIAM BOONE and others' Lessee *vs.* WILLIAM H. PURNELL.

*Admissibility in evidence of General Reputation in regard to Marriage—Right of the Court to permit Evidence to be Withdrawn after it has been once Admitted.*

Evidence by a witness of reputation of marriage is admissible, so long as it appears to be a general reputation; so soon as it appears, however, on cross-examination, or otherwise, that the witness is speaking from information given him by some individual, even of the existence of a general reputation, such evidence is merely hearsay, and as such is inadmissible.

General reputation in regard to marriage may be proved by the testimony of a witness speaking from his own knowledge of the existence of such general reputation; except in cases of adultery or bigamy, in which strict proof is required.

Such evidence is also admissible to negative a presumption of marriage arising from cohabitation. It is admissible as a fact to show whether or not a marriage exists.

Where testimony was objected to, but ruled admissible by the Court, and was afterwards withdrawn by the party offering it, with the consent of the Court, before the bill of exceptions embodying it was presented, before the prayers were submitted, and before the counsel of either party had gone before the jury, an exception taken to the withdrawal of the evidence should be overruled.

APPEAL from the Circuit Court for Baltimore County.

This was an action of *Ejectment,* brought by the lessors of the plaintiff, (now appellants,) for five-sixths of one-third of a lot of ground in the village of Mount Washington, in Baltimore county. The appellants claim as descendants of John Cockey Burley Boone, who died in the year 1824, and who as they contend was twice married, and had by his first marriage (to Betsy Parlett,) two children, Stephen and Eleanor, of whom Eleanor died childless; and Stephen died leaving children

and grand-children, who are the plaintiffs. The defendant claims that the said John Cockey Burley Boone was never married to Betsy Parlett, his children by her being illegitimate, and that he had but one legitimate child named Prudence, who left two children, John C. R. Chamberlaine and Elizabeth P. Chamberlaine, under whom, by divers *mesne* conveyances, the defendant derived his title. The legitimacy of said Stephen and Eleanor was the only question in the case. Six bills of exceptions were taken by the plaintiff below.

*First Exception:* The view taken of this exception by the Court, renders a statement of its nature unnecessary.

*Second Exception:* The defendant having read in evidence the deposition of Jemima Guineavan, the plaintiff objected to all that portion of said deposition as follows: "She heard in the neighborhood that William Parlett, whom she has seen, was a son of the mother of said Stephen and Eleanor, that it was the reputation of the neighborhood that the above J. R. C. B. Boone was the father of said Stephen and Eleanor Parlett;" and they further objected to the following portion of said deposition: "But it was also the belief and report of the neighborhood that said Boone, and the mother of said Stephen and Eleanor, whose name she has heard in the neighborhood was Betsy Parlett, were not married;" that it was not admissible evidence to go to the jury, which objection the Court (EMORY, J.) overruled and permitted the same to be read to the jury. To this ruling the plaintiff prayed leave to except.

*Third Exception:* The defendant having offered in evidence the deposition of Sarah Blufford, the plaintiff objected to the reading to the jury the following part of the deposition included in brackets: ["that said John C. R. Boone never was married until he married Betsy Hale," and also "Betsy Dew and John C. R. Boone never were married to her knowledge and belief; it was the general reputation of the neighborhood that they lived together illicitly,"] as incompetent evidence to go to the jury. This objection the Court overruled, and per-

mitted the same to be read to the jury. To this ruling the plaintiff excepted.

*Fourth Exception:* The defendant having offered in evidence the deposition of Andrew Barrett, the plaintiff objected to all that portion of the deposition included in brackets, as follows: ["Cannot say whether or not Stephen's mother was dead, when he first heard the report above alluded to; deponent heard the report before her death that they were never married, always heard it was the report through the whole neighborhood where deponent lived, that they were never married,"] as not admissible evidence to go to the jury. This objection the Court overruled and permitted the said evidence to be read, leave being allowed the plaintiff to reserve an exception thereto; after the testimony was closed on both sides, but before any prayers had been submitted, or the counsel of either party had gone before the jury, the counsel for the plaintiff presented a bill of exceptions embodying said exception; when the defendant's counsel immediately prayed the Court to exclude from the evidence before the jury the passage of said deposition so objected to, and not allow the jury to consider the same, and the Court thereupon permitted the defendant to withdraw the said testimony and gave the instruction to the jury that the same was not in evidence and should not be considered by them. To this allowance by the Court of the withdrawal of said testimony the plaintiff prayed leave to except.

*Fifth Exception:* Was abandoned.

*Sixth Exception:* The plaintiff offered the following prayers:

1. If the jury believe from the evidence that John C. R. B. Boone and the mother of Stephen P. Boone lived together and cohabited, and that said Stephen was an off-spring of such cohabitation, and that the said John C. R. B. Boone acknowledged said Stephen to be his son and called him by the family name of Boone, they must find that said Stephen was a legitimate son of said John C. R. B. Boone, unless they find satisfactory proof to the contrary.

2. If the jury believe from the evidence that John C. R. B. Boone cohabited with the mother of Stephen P. Boone, and that said Stephen was an off-spring of such cohabitation, and that the said John C. R. B. Boone acknowledged said Stephen as his son, and always treated him as such, and that the said Stephen lived with said John C. R. B. Boone, and was brought up by him as if he were his legitimate son, and that the said John C. R. B. Boone in his last will and testament expressly named said Stephen as his son, and gave him the family name of Boone, and provided for him by bestowing upon him a large portion of his property, they must find that these acts of the said John C. R. B. Boone amounted to a daily assertion that the said Stephen was his legitimate son, and they must presume that he was such, unless they find stronger proof to the contrary.

3. If the jury believe from the evidence that John C. R. B. Boone and the mother of Stephen P. Boone lived together and cohabited, and that said Stephen was an off-spring of such cohabitation, and that the said John C. R. B. Boone acknowledged said Stephen as his son, and in his last will and testament gave him the family name of Boone, and provided for him as his son, and that the said mother died before said John C. R. B. Boone, and that after the death of said mother the said John C. R. B. Boone declared that his wife, the mother of said Stephen, was dead, and pointed out the spot in the family burial ground of the Boone family where she was buried, and expressed a wish to be buried by her side, and was buried by her side in conformity with his wish as aforesaid, and that the said Stephen was also there buried by the side of his said parents, and that a long period has elapsed since the death of the said Stephen and his said parents, they must find that the said Stephen was a legitimate son of the said John C. R. B. Boone, unless they find strong, distinct, satisfactory and conclusive evidence to establish the fact that the said John C. R. B. Boone never was married to the mother of the said Stephen.

Boone, *et al.* Lessee *vs* Purnell.

4. Repeats the prayer immediately preceding to the word " unless," and then proceeds as follows: unless there is evidence to show that there is no reasonable possibility of a marriage ever having taken place between the said John C. R. B. Boone, and the said mother either publicly or privately at any place, either in the State of Maryland or beyond the limits of the State of Maryland, at any period before the death of the said mother.

5. If the jury believe from the evidence that John C. R. B. Boone and the mother of Stephen P. Boone lived together and cohabited, until said cohabitation was terminated by the death of said mother, and that Stephen P. Boone and Eleanor R. Boone were the off-spring of such cohabitation, and that he called them his son and daughter and gave them the family name of Boone, and brought them up as his children and provided for them as such, and that there was a reputation that he was married to said mother as well as a reputation that he was not so married, and that after the death of the said mother, he said that his wife, the mother of Stephen, was dead, and pointed out the spot in the burial ground of the Boone family where the said mother was buried, and spoke of her to the children of Stephen and Eleanor as their grandmother, and expressed a wish to be buried by her side, and was there buried, and that said Stephen was also there buried, and that many years have elapsed since the death of said Stephen and his said parents, they must find that the said John and said mother were married, in the absence of conclusive proof to the contrary; and the statement of a witness that the said mother cohabited with one Charles Parlett previously to her said cohabitation with said Boone, and any evidence that said Parlett was living at the time of the cohabitation of said mother with said Boone, and any reputation that said mother and said Boone were never married, does not appear such conclusive proof.

6. If the jury believe from the evidence that John C. R. B. Boone cohabited with the mother of Stephen P. Boone,

and that there was a reputation that he was married to said mother, and if they believe from the evidence that said Stephen was an off-spring of such cohabitation, and that said John recognized said Stephen as his son, and in his last will and testament called him his son, and gave him the family name of Boone, such cohabitation, recognition and reputation offered legally sufficient proof that said John was married to said mother, and reputation that the said parents of said Stephen were not married, and evidence that said mother had cohabited with one Charles Parlett antecedently to her said cohabitation with said John, and evidence that said Charles Parlett was living during her said cohabitation with said John, can have no legal effect to disprove her said marriage with said John, proved as aforesaid.

7. If the jury believe from the evidence that John C. R. B. Boone cohabited with the mother of Stephen P. Boone, and that said Stephen was an off-spring of such cohabitation, and that the said John C. R. B. Boone recognized said Stephen as his son, and in his last will and testament called him his son, and gave him the family name of Boone, and that the said Stephen and his said parents died many years ago, such cohabitation and recognition as aforesaid, offered legally sufficient proof that the said John was married to the said mother, unless they find conclusive proof to the contrary, and that no declaration or declarations of said John that he never was married to the said mother, can have any legal effect as evidence against the proof of marriage as aforesaid, unless it has been shown that such declaration or declarations were solemnly and deliberately made.

8. If the jury believe from the evidence that the mother of Stephen P. Boone lived with John C. R. B. Boone, and cohabited with him, and that the said Stephen was an off-spring of such cohabitation, and that the said John acknowledged said Stephen as his son, and in his last will and testament declared him to be his son, and gave him the family name of Boone, and that the said Stephen and his parents

died many years ago, they must find that the legitimacy of the said Stephen is established by competent proof, and that the defendant has produced no evidence in this cause, legally sufficient to overthrow such proof of legitimacy.

9. If the jury believe from the evidence that the land claimed in the declaration in this action is a portion of the land of which John C. R. B. Boone died seized, and that Stephen P. Boone, Eleanor Burke and Prudence Chamberlaine, were his legitimate children, and that the plaintiff's lessors are children and grand-children of said Stephen, and that John C. R. B. B. Chamberlaine and Elizabeth P. Boone, are the children of the said Prudence, and that some time after the death of the said John C. R. B. Boone, the said John C. R. B. B. Chamberlaine and the said Elizabeth P. Boone claimed possession of the said land as heirs of said John C. R. B. Boone, or that it was so claimed for them by their guardian, they must find that no such possession of said Chamberlaine and Elizabeth, and those claiming for or under them could be adverse to the title of the plaintiff's lessors to an undivided portion of said land as heirs of said John C. R. B. Boone, until there had been an *ouster* of said plaintiff's lessors by the said Chamberlaine and Elizabeth, or those claiming for or under them, and a lapse of twenty years subsequent to such *ouster* and before the commencement of this suit, and that no reception of the profits or deeds of conveyance of said land by the said Chamberlaine and Elizabeth, or by those claiming for or under them, would amount to an *ouster* of the plaintiff's lessors, and that such *ouster* would only be by an expulsion of the plaintiff's lessors from said land, a refusal to allow them to enter thereon or an open notorious and uniform denial of their title to an undivided portion thereof, known to the plaintiff's lessors twenty years before the commencement of this suit, and the burden of proving such *ouster* and knowledge thereof as aforesaid, is on the defendant, and in the absence of proof of such *ouster* and knowledge thereof by the plaintiff's lessors twenty years

before the commencement of this suit, the plaintiff is entitled to receive an undivided portion of said land as claimed in the declaration.

10. If the jury believe from the evidence that the land described and claimed in the declaration in this cause is a portion of the land of which John C. R. B. Boone died seized, and that the plaintiff's lessors are legitimate descendants and heirs at law of said John, and that John C. R. B. B. Chamberlaine and Elizabeth P. Boone are also heirs of the said John, and that some time after the death of said John, the said Chamberlaine and Elizabeth claimed possession of said land as heirs of said John, but find no evidence to show that the land described and claimed in the declaration has been held by continuous enclosure for twenty years before the commencement of this suit, the right of entry of said plaintiff's lessors has not been barred by the operation of the statute of limitation.

11. If the jury believe from the evidence that John C. R. B. Boone died seized of the land described and claimed in the declaration in this cause, and that the plaintiff's lessors are legitimate descendants and heirs-at-law of said John, and that after the death of said John, one John C. R. B. B. Chamberlaine and one Elizabeth P. Boone claimed and held possession of said land, claiming the same as heirs-at-law of said John, they must find that the said Chamberlaine and Elizabeth could not hold said land adversely to the title of the plaintiff's lessors to one undivided portion thereof, until after an *ouster* of said plaintiff's lessors, and subsequent possession for twenty years, and if the jury believe that there was such an *ouster*, but believe that at the time of said *ouster* any of the plaintiff's lessors were married women and continued under coverture until the commencement of this suit, they must find that the right of entry as respects the undivided portion in said land of said married women, continuing under coverture as aforesaid, has not been barred by adverse possession.

12. If the jury believe from the evidence that the land described and claimed in the declaration in this cause, is a

portion of the land of which John C. R. B. Boone died seized, in the year 1824, and that the plaintiff's lessors are legitimate descendants and heirs-at-law of said John C. R. B. Boone, and that at some period after the death of said John C. R. B. Boone, one John C. R. B. B. Chamberlaine and one Elizabeth P. Chamberlaine, now Elizabeth P. Boone, claimed said land of which said John C. R. B. Boone died seized, as aforesaid, as his heirs, and in the year 1835, divided said land between them by deeds of partition, such deeds of partition were null and void so far as the undivided portion of the plaintiff's lessors in said land was concerned, and if they find that afterwards said Elizabeth P. and her husband Samuel Boone, and said John C. R. B. B. Chamberlaine and wife, conveyed by deed or deeds, said land to Grafton L. Dulany, such deed or deeds were also null and void so far as the undivided portion of the plaintiff's lessors was concerned, and if the jury find that the defendant holds and claims the land sued for in this action, by virtue of subsequent conveyances connecting his title to said land to the title of said Elizabeth and John C. R. B. B. Chamberlaine, by the deeds aforesaid, then the plaintiff is entitled to recover one undivided portion of said land as claimed in the declaration.

13. Upon the evidence offered in this cause, the jury can not find that the right of entry of the plaintiff's lessors has been barred by the operation of the statute of limitation, and if the jury believe from the evidence that the plaintiff's lessors are legitimate descendants and heirs-at-law of John C. R. B. Boone, and that said Boone died, seized of the land described and claimed in the declaration, the plaintiff is entitled to recover an undivided portion of said land.

14. Was withdrawn.

15. If the jury believe from the evidence that John C. R. B. Boone cohabited with the mother of Stephen P. Boone, and that said Stephen and Eleanor Burke were the off-spring of such cohabitation, and that said John recognized said Stephen and Eleanor as his children such cohabitation and re-

cognition offered legally sufficient proof of marriage between said John and said mother, until such proof of marriage is overthrown by stronger proof to the contrary, and if the jury further believe that after the death of said mother, the said John was married to one Elizabeth Hale, and that said marriage with said Elizabeth Hale, occurred in the year 1791, or about seventy-five years ago, as shown by the proof of such marriage offered in this cause, and further believe from the testimony of George Reed, a witness sworn and examined on the part of the defendant, that said Reed is now seventy-six years of age, they must find that said Reed could have no personal knowledge of an alleged cohabitation between one Charles Parlett and the said mother of Stephen, before the said cohabitation between said John and said mother, and if they find no other evidence of cohabitation between said Parlett and said mother than hearsay report and reputation, they cannot from said evidence presume a marriage of said mother with said Parlett, so as to invalidate the marriage between the said mother and said John, proved by cohabitation and recognition as aforesaid.

16. If the jury believe from the evidence that John C. R. B. Boone and the mother of Stephen P. Boone cohabited, and that such cohabitation is proved by the direct testimony of a witness or witnesses who saw them living together as man and wife, such cohabitation is proof of marriage, unless overthrown by stronger proof to the contrary; and from hearsay reputation or report that the said mother cohabited with one Charles Parlett, before her said cohabitation with said John, they cannot presume that there was a legal marriage between said mother and said Parlett so as to invalidate any marriage between said mother and said John, proved by cohabitation as aforesaid, and if they find no other evidence of a cohabitation between said mother and said Parlett, than hearsay reputation or report that they did cohabit as aforesaid, they must find that a marriage between said Parlett and said mother is not established by any legally sufficient proof of such marriage.

17. If the jury believe from the evidence that John C. R. B. Boone and the mother of Stephen P. Boone, did agree to live together and cohabit as man and wife, and did so live together and cohabit, until such cohabitation was terminated by the death of said mother, and find no other evidence than hearsay report and reputation, that said mother had before such cohabitation been married to one Charles Parlett, and hearsay report and reputation that said Parlett was living, during her said cohabitation with said John, they must find that such living together and cohabitation as aforesaid, constituted a legal marriage between said John and said mother, and the jury must presume from the facts of living together and cohabitation as aforesaid, that the said John and the said mother did agree to live together and cohabit as aforesaid, if they find no evidence to show that the said mother did not voluntarily and by consent live with and cohabit with said John, but did so against her own will and inclination.

18. If the jury believe from the evidence offered in this cause that John C. R. B. Boone and Elizabeth, the mother of Stephen Parlett Boone and Eleanor Boone, lived and cohabited as man and wife, and that said Boone repeatedly acknowledged said Elizabeth as his wife, and that he held her out to the world as his wife, and was visited by the neighbors as such, and that said Stephen and Eleanor were the children of said John and Elizabeth, and were acknowledged by him as his children and were treated by him as such, they must presume that the said John C. R. B. Boone and said Elizabeth were married, and that said Stephen was his legitimate son, notwithstanding they may find that there was hearsay evidence of said Elizabeth being married to one Parlett, previously to her cohabiting with said John, and notwithstanding they may find there was only hearsay evidence that said Parlett had returned during said cohabitation with said Boone, or after the death of said Elizabeth.

The defendant prayed the Court to instruct the jury as follows:

1. That the fact that John C. R. B. Boone cohabited with Betsy Parlett, and that the off-spring of such cohabitation were recognized by him to be his children, and provided for in his will, and were described therein by the surname of Boone, and assumed and passed by that name, and the declarations of said Boone, and the other facts and circumstances offered in evidence on the part of the plaintiff as tending to prove a marriage of said John C. R. B. Boone and Betsy Parlett, if the jury believe the witnesses testifying thereto, is evidence sufficient of itself to raise a presumption of the inter-marriage of said parties, but if the jury further find that at the time of the said cohabitation the general reputation of the neighborhood in which they lived was, that they were not married, but were living together illicitly, and that the general reputation within the family of the said Boone, then and subsequently was, that their intercourse was so illicit, and that the said John C. R. B. Boone, after said cohabitation, repeatedly declared that he had never been married to the said Betsy Parlett, then the facts and circumstances taken together afford evidence tending to rebut such presumption of marriage, and if the jury from the whole evidence in the cause find that the said John C. R. B. Boone and Betsy Parlett were never married, the plaintiff will not be entitled to recover.

2. That if they find that previously to the intercourse between the said John C. R. B. Boone and Betsy, the mother of the said Stephen and Eleanor, of which the said Stephen and Eleanor were the fruit, the said Betsy was married to one Parlett, and that the said Parlett was not then dead, but in life, and that he survived the time when the marriage of the said Boone and Betsy Parlett is alleged and claimed on the part of the plaintiff to have taken place, then, even if the jury should find a marriage in fact between the said Boone and Betsy, in the life-time of her said former husband, Parlett, such marriage would be invalid and void.

The Court granted the first, second, third, seventh, ninth, tenth, eleventh, twelfth and thirteenth prayers of the plaintiff, which were conceded by the defendant, and the two prayers of the defendant; the fourteenth prayer of the plaintiff was withdrawn, and the Court refused his fourth, fifth, sixth, eighth, fifteenth, sixteenth, seventeenth and eighteenth prayers; to the granting of the prayers of the defendant, and to the refusal of the prayers of the plaintiff, he excepted, and the verdict and judgment being against him, he appealed.

This cause was argued before NELSON, STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*R. R. Boarman,* for the appellants:

The question in relation to the admissibility of hearsay in the neighborhood, and of declarations of persons not connected with the family by consanguinity or by marriage, as evidence to disprove legitimacy, is involved in the plaintiff's third, fourth and fifth bills of exceptions. The whole current of English authorities is strongly against the admissibility of such evidence. The English Courts have uniformly held that the hearsay must be in the family, and that the declarations must proceed from persons connected with the family by blood or by marriage. *The Berkeley Peerage Case,* 4 *Camp.,* 401; 2 *Sel., N. P.,* 763; *Adams' Ej.,* 283, 284; *Buller's N. P.,* 295; *Gilb. L. Ev.,* 212; 1 *Phillip's Evidence,* 240, 250.

There seems to be an equal weight of authority in the decisions of the American Courts against the admissibility of hearsay as evidence of pedigree, unless such hearsay proceeds from the family. *Stien vs. Bowman,* 13 *Peters,* 209; *Elliott vs. Piersol,* 1 *Peters,* 328; *Morgan vs. Purnell,* 4 *Hawks,* 95; *Greenwood vs. Spiller,* 2 *Scam.,* 502; *Birney vs. Hann,* 3 *A. K., Marshall,* 322; *Waldron vs. Tuttle,* 4 *New Hamp.,* 371; *Westfield vs. Warren,* 3 *Halst.,* 249; *Jackson vs. Browner,* 18 *Johns.,* 37; *Chapman vs Chapman,* 2 *Conn.,* 347; 1 *Greenl. Ev.,* sec. 103.

The decisions in Maryland are clearly against the admissibility of hearsay as evidence of pedigree, unless it proceeds from the family. *Craufurd vs. Blackburn,* 17 *Md. Rep.,* 56; *Cope's Adm'r vs. Pearce,* 7 *Gill,* 263, 264; *Pancoast vs. Addison,* 1 *H. & J.,* 350.

It is true that in *Sellman vs. Bowen,* 8 *G. & J.,* 54, the words " general reputation " are used without any qualification whatever. But the question of admissibility was not then before the Court.

The plaintiff's eighth prayer should have been granted by the Court below, and any argument which successfully demonstrates the soundness of the legal propositions enunciated in this prayer, leads irresistibly to the conclusion, that the fourth, fifth, sixth, fifteenth, sixteenth and eighteenth prayers of the plaintiff should not have been rejected. The facts of cohabitation and recognition are not denied by the defendant; for his own witnesses, as well as those of the plaintiff, proved these facts; and upon the hypothesis that the jury believed what was not disputed, the legal effect of the whole of the defendant's evidence is brought under consideration by the eighth prayer of the plaintiff. That it is competent for the Court to pronounce upon the legal sufficiency of the whole evidence, is a principle too clearly established by the decisions of this Court to be successfully controverted. *Clark's Adm'r vs. Marriott's Adm'r,* 9 *Gill,* 334; *Cole vs. Hebb,* 7 *G. & J.,* 20.

What then is the legal effect resulting from the proof of cohabitation and recognition? That marriage and legitimacy are established, unless negatived by legally sufficient proof to the contrary. In the whole range of authorities, English and American, there are no adverse decisions, except in cases of bigamy and actions for criminal conversation. When parties live together as man and wife, the law presumes the existence of the marriage relation. The maxim *odiosa et inhonesta non sunt in lege presumenda* is strictly applicable in such cases. The law presumes against vice and immorality; and when

two persons of opposite sexes are found living together in the intimate relations which subsist in lawful wedlock, it will not presume an illicit connection. It presumes marriage and not concubinage; for as every person is presumed to be innocent until proved to be guilty, so every man is presumed to be moral, and every woman virtuous, until the contrary is made to appear by competent proof. As the law will not presume an illicit intercourse in such cases, neither will it permit a jury to so presume; for such presumption would be against the law, and the jury are sworn to find a verdict in accordance with the law. Now, with the exception of an alleged declaration of John Boone to George Reed, which was excluded by. the instructions of the Court contained in the plaintiff's seventh prayer, there being no proof that such declaration was solemnly and deliberately made, the whole of the defendant's evidence is hearsay. It is unnecessary to cite authorities to show that, in the very nature of things, from hearsay evidence nothing but a presumption can arise. Now, as the law will not presume an illicit connection, any evidence which merely raised a presumption of an illicit intercourse, is legally insufficient to overthrow the proof of legitimacy arising from the facts of cohabitation and recognition; and the Court should so have instructed the jury — more especially after having told them in the plaintiff's third and seventh prayer, that the evidence must be "strong, distinct, satisfactory and *conclusive*," in order to rebut the proof of marriage established by the facts aforesaid. "It is an established maxim that the presumption is always in favor of marriage. *Semper presumitur pro matrimonii. Ferrie vs. The Public Adm'r*, 4 *Bradf.*, 84, &c.; *Taylor vs. Taylor*, 2 *Lee*, 124; *Best on Presumption*, 57, 58; *Hubbuck on Succession*, 248, 250.

The Court below evidently erred in rejecting the plaintiff's fourth, fifth, sixth, eighth, fifteenth, sixteenth and eighteenth prayers, and in granting the two prayers of the defendant. Having first granted the plaintiff's third and seventh prayers,

in the instructions given in the defendant's first prayer, the Court below virtually told the jury that the declarations of John Boone, not "shown to have been solemnly and deliberately made," as required by the tenor of the instructions given in the plaintiff's seventh prayer, were, together with the reputation of the neighborhood and family, "strong, distinct, satisfactory and conclusive evidence." Is it such? Why, when wholly uncontradicted, such evidence can merely raise a presumption, and yet the jury are told that if they believe the facts that John Boone and the mother of Stephen lived together as man and wife until separated by death; that after her death, John Boone spoke of her as his wife to several witnesses; that she was buried in the family burial ground of the Boone family; that John Boone and his and her two children were buried, in conformity with his request, by her side; that John Boone made a "daily assertion" that Stephen was his legitimate son by acknowledging and bringing him up as such, and in his last will and testament, the most solemn act of his whole life, calling him "my son Stephen Parlett Boone," and that there was a belief in the family that John Boone and the said mother were married, as well as a belief that they were not; the jury are told that if they believe all these facts, a mere presumption arising from the weakest kind of evidence ever admitted in a Court of justice, affords *conclusive* proof against the proof of legitimacy established by the facts aforesaid. If the jury believed "the other facts and circumstances" referred to in the defendant's first prayer they must have found that there was a belief among a portion of the family that John Boone and the mother of Stephen were married. As there was a belief of a portion of the family that the parties were married, and a belief of another portion of the same family to the contrary, there was no *reputation* in the family; only conflicting opinions. The reputation of any particular family is the *general belief of the whole family.*— Hence, the defendant has failed to prove general reputation in the family; and as the alledged declaration of Boone to

Boone, *et al.* Lessee *vs.* Purnell.

Reed, and the hearsay of the neighborhood in relation to a former husband being alive during the cohabitation between the parents of Stephen, can have no legal effect as evidence; the only evidence adduced adverse to the proof of legitimacy, are the opinions of certain persons connected with the family, that the parties were not married. Now, the parties might have been married and these persons have been ignorant of the fact. So the defendant, having failed to prove the general reputation of the family, has only succeeded in establishing the fact that there were certain members of the Boone family who had no personal knowledge of the marriage. This is the whole of his evidence when carefully analyzed. Now, ignorance of the fact of a marriage certainly does not afford " strong, distinct, satisfactory and conclusive proof" that there was no marriage.

*Arthur W. Machen* and *Richard J. Gittings*, for the appellee:

General reputation is to be distinguished from particular declarations and also from tradition. These last are essentially *hearsay*, that is, testimony by one person as to what another person has said. The rule with regard to them is well established which confines them to the family. But *general repute* is a *fact*, and may be proved by any person who is directly cognizant of it, and therefore can speak of his own knowledge. Mr. Starkie shows the grounds of the distinction very clearly. 2 *Stark. Evid., tit. Pedigree,* 843, 844, (*ed.* 1842.)

The admissibility of proof of general reputation was established, in England, by *Doe & Fleming vs. Fleming,* 4 *Bing.,* 266, (13 *Eng. C. L.,* 426): In Maryland, by *Sellman vs. Bowen,* 8 *G. & J.,* 50, 54, and *Fornshill vs. Murray,* 1 *Bland,* 479, 482; see also, *Birt vs. Barlow,* 1 *Doug.,* 172, 174; *Evans vs. Morgan,* 2 *Cromp. & Jervis,* 453, 456; *Lessee of Bannut, et ux. vs. Day,* 3 *Wash. C. C.,* 243; *Jackson vs. Cooley,* 8 *Johns.,* 129; *Goodman vs. Goodman,* 4 *Jur., N. S.,* 1220, *by*

*Stuart, V. C.,* (1858); *Hedden vs. Patrick,* 2 *Swabey & Tristram,* 170, *stated in Fisher's Annual Digest,* (1861) *supplement to Jurist.,* 83; *Campbell vs. Campbell, House of Lords,* 1867, *Law Reports,* 1 *Scotch Appeals,* 182.

Of course, if such evidence is competent to prove a marriage, it is competent in disproof of marriage—either directly, or by making out a prior marriage, as in *Fornshill vs. Murray,* 1 *Bland,* 479, 482. In *Jewell vs. Jewell,* 2 *How.,* 219, evidence of general reputation of the places where the parties lived, was introduced in support of the marriage, and also to disprove it; and its competency for both purposes seems to have been recognized in the opinion of the Court as delivered by Chief Justice TANEY. See *Hamick vs. Bronson,* 5 *Day,* 290; *Sneed vs. Ewing, et ux.,* 5 *J. J. Marshall,* 491. So, Hubback, who takes great pains to show that declarations of deceased persons, to be admissible, must have proceeded from persons connected with the family, states distinctly that *general reputation* is competent evidence of a *marriage,* and also that it is competent evidence to negative marriage and prove *illegitimacy. Hubback Evidence of Succession,* 243, 649; see *Craufurd vs. Blackburn,* 17 *Md. Rep.,* 55, and *Blackburn vs. Craufurd,* 3 *Wallace,* 175. It is to be observed that the evidence of general repute offered by the defendant, did not stand alone, but was offered in connection with evidence of the acts and conduct of the principal parties. Its admissibility under such circumstances, seems never to have been questioned.— *Bishop on Marr. and Divorce, sec.* 438. That portion of it which is most strenuously objected to on behalf of the plaintiff—all indeed that seems to be made matter of serious objection—that is to say, the portion relating to the nature of the intercourse between Boone and Betsy Parlett, and the illegitimacy of Stephen Parlett Boone and Eleanor Parlett Boone, was in answer to similar though more slight evidence of general reputation introduced on the part of the plaintiff. The evidence went to qualify, explain and complete the evidence offered on the other side. In the language of Judge TANEY,

it was part of the *res gestæ*. *Jewell vs. Jewell,* 1 *Howard,* 232. Is not neighborhood reputation a part of the *res gestæ*?

It is, perhaps, hardly necessary to invoke the principle asserted under the first point to justify the several rulings of the Court contained in the first three bills of exception. The particular passages excepted to, were so connected with other evidence as to be unobjectionable under the circumstances, or were permitted to be read in the first instance in the exercise of a judicial discretion as to the order and conduct of the trial, which could not without great practical inconvenience be open to review. It is manifest that aided as the jury were by the instructions, the plaintiff could have sustained no injury by the course which was pursued. *Anderson vs. Garrett,* 9 *Gill,* 131.

The right of the Court to do what constitutes the ground of the fourth exception seems indisputable. The evidence in question, whether admissible or inadmissible in point of law, having been in fact excluded, the plaintiff has nothing to complain of.

The eight prayers on the part of the plaintiff, which were refused, were all of them objectionable, not merely as contravening the doctrine as to the competency of evidence of general neighborhood reputation, but on special grounds which will be readily seen on examination. And the instructions given at the instance of the defendant, left the case to the jury quite as favorably for the plaintiff as he had a right to require.

BRENT, J., delivered the opinion of this Court.

Although the record in this case is very voluminous, and the number of exceptions taken and prayers asked in the Court below is unusually large; there is in reality, as was conceded in the argument on both sides, but one important question submitted for the decision of this Court. Is general reputation admissible evidence in regard to marriage? This kind of evidence is not to be confounded with *hearsay* evi-

dence. Though generally treated of by the text writers under
that head, and though composed of the speech of third per-
sons not under oath, it is considered original evidence, and
not hearsay; the immediate subject of inquiry being the con-
currence of many voices, which raises the presumption, that
the fact, in which they concur, is true. 1 *Taylor's Ev.*, 508.
It must rest upon competent knowledge, and is therefore
admitted in regard to matters only of public or general in-
terest, the law presuming that upon such matters the public
is enabled to speak knowingly and truly. In *Hubback's Ev.
of Suc.*, 243, (*mar. p.*) it is said: "reputation of marriage may
be proved by the testimony of living witnesses, speaking to
the existence of that reputation." In the case of *Evans vs.
Morgan*, 2 *Crompton & Jervis*, 453, where the question of
marriage was directly in issue, the testimony was held to be
admissible. In reviewing this case Hubback properly states
the ground of its admissibility, where *marriage* is the subject
of inquiry. He says, on page 244, "it appears from this case
and from the general tenor of the authorities, that reputation
of marriage, *unlike that of other matters of pedigree*, may pro-
ceed from persons who are not members of the family. The
reason of the distinction is to be found in the *public interest*,
which is taken in the question of the existence of a marriage
between two parties; the propriety of visiting or otherwise
treating them in society as husband and wife, the liability of
the man for the debts of the woman, the power of the latter
to act *suo jure*, and their competency to enter into new matri-
monial engagements, being matters which interest not their
relations alone, but every one, who, by coming in contact
with them, may have occasion to regulate his conduct accord-
ingly as he understands them to be married or not." The
admissibility of this evidence is also recognized in 2 *Starkie
on Ev.*, 843, 844, and in 3 *Phillips on Ev.*, 598. In the 1 *vol.
of Greenleaf's Ev.*, sec. 107, referred to by the counsel for the
appellants, the language used by the author is not understood
as adverse to its admissibility in a case like the present. His

doubt is expressed in regard to " ordinary cases, where pedigree is not in question." In the recent and very able work of Taylor on the Law of Evidence, the testimony is regarded as proper, and the ground of its admissibility is stated with much force and clearness. In *section 517, vol. 1*, it is said, " thus it has frequently been decided that, except in petitions for damages by reason of adultery and in indictments for bigamy, where strict proof of marriage is required, *general reputation* is admissible to establish the fact of parties being married. In most of the cases, the marriage has been proved by evidence of certain specific facts, such as the parties being received into society as man and wife, being visited by respectable families in the neighborhood, attending church and public places together, and otherwise demeaning themselves in public, and addressing each other as persons actually married. Still, though some of these circumstances are receivable, as amounting to acts of admission by the parties themselves, those, which are merely evidence of the *treatment* of the parties by third persons, cannot be admissible on any principle that would not equally include the declarations of strangers. The acts, like the words, merely show the opinion entertained by persons not called as witnesses; and though it may be said, that what a person does is usually better evidence of his opinion than what he says, yet this is an observation which goes rather to the weight than the admissibility of the evidence. Accordingly evidence of general reputation in the neighborhood, even when unsupported by facts, will be receivable in proof of marriage." In *Doe vs. Fleming*, 4 *Bing.*, 266, the evidence was admitted in an action of ejectment by a party seeking to recover as heir-at-law. PARK, J., remarked, " the general rule is, that reputation is sufficient evidence of marriage, and a party, who seeks to impugn a principle so well established, ought, at least, to furnish cases in support of his position;" and BEST, C. J., added, " the rule has never been doubted." In *Goodman vs. Goodman*, 4 *Jur.*, N. S., 1224, (1858,) the principle, so emphatically announced in

this case, is fully recognized and affirmed by the Vice Chancellor. He says, " on the question of reputation of marriage the law was well settled in the case of *Doe vs. Flemming,* 4 *Bing.,* 266." In *Lessee of Banert et ux. vs. Day,* 3 *Wash. C. C. Rep.,* 243, the evidence was admitted, and it was held that it was no objection that the witness, who deposed to the general reputation, was not a member of the family. The doctrine is also recognized in *Sellman vs. Bowen,* 8 *G. & J.,* 54; *Ex parte Taylor,* 9 *Paige,* 617; *Clayton vs. Wardell,* 4 *Comstock,* 230. In *Spedden vs. Patrick,* 2 *Swabey & Tristram,* 170, (*Jur. Dig. of* 1861, p. 83,) the rule is correctly laid down, and as there stated is in accordance with our own views. It *is* there said that " evidence by a witness of reputation of marriage is admissible so long as it appears to be a general reputation; so soon as it appears, however, on cross-examination or otherwise, that the witness is speaking from information given him by some individual, even of the existence of a · general reputation, such evidence is merely hearsay, and as such is inadmissible."

The cases relied upon by the appellants' counsel have been carefully examined, and they are not in conflict with the authorities above cited. They are either cases in which the question of *marriage* is not directly in issue, or in which the proof offered was inadmissible upon the ground of its being merely hearsay. In *Stein vs. Bowman, et al.,* 13 *Peters,* 209, so strongly urged in the argument on behalf of the appellants, the testimony rejected by the Court, was that of a witness, who was introduced to prove that he had *heard,* in Hanover, Germany, " from many old persons of whom he inquired, that the plaintiff was the brother of Nicholas Stone, deceased." It will be readily perceived that the question there presented, and to which the reasoning of the Court is confined, was wholly different from the one involved in this case. The evidence was clearly *hearsay,* and the Court regarding it as such held it to be inadmissible—not coming within the lim-

ited rule admitting from necessity, hearsay evidence in cases of pedigree.

After a very patient examination of the numerous authorities cited in the argument of this case, we have concluded that general reputation in regard to marriage may be proved by the testimony of a witness speaking from his own knowledge of the existence of such general reputation, except in cases of adultery or bigamy, in which strict proof is required.    In reference to the position that general reputation, even if admissible to prove marriage, is not admissible to negative a presumption of marriage from cohabitation, it may be said, that the evidence is not admitted upon the ground that the public has an interest in proving a marriage, but upon the ground of a public interest in the question of a marriage between two parties.    It is admissible as a fact, to show whether or not a marriage exists. When a question is propounded to a witness its legality cannot be made to depend upon the affirmative or negative character of his answer.    It must, therefore, follow, as argued by the appellants' counsel, " if such evidence is competent to prove marriage, it is competent in disproof of marriage." Upon these views of the law this case will be decided;—and there is therefore no error in the Court below in admitting the testimony, objected to by the appellants, in the second and third exceptions.    The evidence offered in the first exception and ruled out by the Court, was afterwards admitted under the agreement of counsel, which the appellants repudiated in their first offer, and they have had the benefit of it before the jury.    They have therefore sustained no injury, and the question raised by this exception having become a mere abstraction, the ruling below even if it appeared to be erroneous, will not be reversed.

We do not perceive anything in the fourth exception which can entitle the appellants to a reversal. The testimony, to the admission of which they had only reserved an exception, was by permission of the Court withdrawn by the defendant before the bill of exceptions embodying it was presented, before the

prayers were submitted, and before the counsel of either party had gone before the jury. The exception is to the permission of the Court allowing the testimony to be withdrawn. Under the law, as above announced, it is probable that the testimony was admissible, but whether admissible or not, it being withdrawn and the jury directed not to consider it in making up their verdict, we cannot see that any harm resulted to the appellants, or any error was committed requiring the intervention of this Court in their behalf. The fifth exception was abandoned at the argument. The sixth exception presents for consideration the prayers offered on both sides. The first prayer of the defendant correctly lays down the law in the case, and is sustained by the views we have expressed in regard to the admissibility of evidence of general reputation. The evidence of a previous marriage of Elizabeth Parlett to one Parlett, and his surviving her, upon which the second prayer of the defendant is based, was admitted without objection. The evidence relied upon by the appellants to establish a marriage between Boone and Elizabeth Parlett, raised a presumption only of such marriage, and did not amount to strict proof. The province of the jury was to determine upon the facts before them, whether or not such a marriage had really existed. If Elizabeth was the wife of Parlett, and he survived her, she could not have contracted a valid marriage with Boone. This prayer was therefore properly granted, and the fifth, sixth, fifteenth, sixteenth and eighteenth prayers of the plaintiff, presenting substantially the converse, were properly refused. The fourth prayer of the plaintiff extends the law to its utmost verge, even where there is strict proof of marriage, but is not applicable to a case like the present, in which a presumption only of marriage is raised by the proof. The eighth prayer, in view of all the evidence in the case, could not have been granted, and there being no evidence in the record upon which the seventeenth prayer is based, it is unnecessary to examine the question sought to be raised by it. The law was most liberally stated for the appellants by the

Court below in granting, with the consent of the defendant, their first, second, third, seventh, ninth, tenth, eleventh, twelfth and thirteenth prayers. The instructions granted fully covered the law in the case, and the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 8th May, 1868.)