## The Providence Life Insurance and Investment Co. of Chicago *vs.* Anna Martin.

*Accident within the meaning of an Insurance Policy— Negligence of the Assured — Questions of fact— Practice.*

An unusual and unexpected result attending the performance of a usual and necessary act, and an event which takes place without foresight or expectation, is an " accident " within the meaning of a policy of insurance.

In an action on a policy of insurance against accident, the negligence or carelessness of the assured is no defence.

A policy of insurance against accident contained a clause exempting the company from liability for injury, caused by the wilful exposure of the assured to any unnecessary danger or peril. It contained also the condition that " in the event of injury, within the meaning of this policy, occurring to the assured, he, or in case of his death, his legal representatives, shall as soon thereafter as possible, give notice in writing thereof to the company at their office in Chicago, or to the agent writing this policy, together with the full name, occupation and address of the assured, with full particulars of the accident or injury." In an action on the policy, the plaintiff's prayer, which was granted by the Court, left it to the jury to find whether the death of the assured was caused by his wilful exposure to unnecessary danger, and whether proof of the death, with full particulars of the accident, was furnished to the defendant's agent as soon as possible thereafter? The jury found against the insurance company. HELD :

That the granting of the plaintiff's prayer, which submitted these questions, being questions of fact, to the finding of the jury, furnish no ground for reversing the judgment.

A party who has offered testimony which was admitted by the Court against the objection of the opposite party, may afterwards, and before instructions are asked for, and before the case has been argued by counsel, ask to have the same withdrawn from the consideration of the jury, and the Court may allow and direct its withdrawal.

APPEAL from the Circuit Court for Allegany County.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

Providence Life Insurance and Investment Co. of Chicago *vs.* Martin.

*George A. Thruston,* for the appellant.

*William Walsh,* for the appellee.

MILLER, J., delivered the opinion of the Court.

By the policy upon which this action was brought, the husband of the appellee was insured against fatal accidents, as well as those resulting only in personal injury. The assured was a locomotive engineer, in the employ of a railroad company, whose principal business is the transportation of coal from the mines in Allegany county; and, on the 21st of July, 1866, whilst backing his engine upon a down grade, with a car in front as a precaution to check the speed, he directed the fireman to run it, and went upon and over the tender to get into this car to draw the brakes, and in doing so slipped and fell between the car and the tender, and was instantly killed by the tender passing over his body. The speed at the time was about eight miles per hour, on a descending grade. The chief grounds of defence taken by the insurance company, which we shall consider in their order, are:

1st. That, under all the circumstances of the case, this was not an accident within the terms and conditions of the policy for which the insurers are responsible.

2d. That notice of the death, with full particulars of the accident, was not given within the time required by the second condition of the policy.

1st. The policy insured the "deceased *against loss of life* in the sum of $2,000, to be paid to Anna Martin or her legal representatives within ninety days after sufficient proof that the assured, at any time after the date hereof, and before the expiration of this policy, shall have sustained personal injury caused *by any accident within the meaning of this policy and the conditions hereunto annexed,* and such injuries shall occasion death within ninety days from the happening thereof, sufficient proof being furnished this company." It is then provided that no claim shall be made under this policy in respect of any injury

unless the same shall be caused by some outward and visible means, of which proof satisfactory to the company can be furnished, "and this insurance *shall not extend to* any injury caused by or arising from natural disease, or by any surgical operation rendered necessary by disease, or to any death or injury caused by duelling or fighting, or other breach of the law on the part, of the assured, or by suicide, whether felonious or otherwise, or by war, riots or invasion, or happening while the assured is in a state of intoxication, or riding races, *or by his wilfully exposing himself to any unnecessary danger or peril.*" It is also further provided that "this policy is granted on the express condition that the declarations of the assured in his application for this insurance (which is hereby referred to and made part of this contract, and a warranty on the part of the assured) are true in all respects." In his application the assured said: "My age is thirty-two years; my profession or occupation is locomotive engineer; my class of insurance is general accident; my class of risk is special," &c. It was proved that the premium for insuring an engineer, fireman or brakeman was the same in each case, and was the highest rate except for persons working in a powder mill.

It is wholly unnecessary to examine, in this case, the law upon the subject of warranty or of conditions precedent, for it is not pretended the statements in the application for insurance were not, in every respect, literally true. The assured was, at the time of his application, a locomotive engineer by profession or occupation, and the condition or warranty in this particular was fully gratified. The purpose of this stipulation was to enable the company to fix the rate of premium and guard it against misrepresentation and fraud by preventing those whose ordinary occupation rendered them more exposed to accident, from obtaining insurance at the same rate as those whose professions and pursuits in life are usually attended with less peril and less exposure to danger. But there is no condition or warranty, in any part of the policy, that the assured will not temporarily or permanently engage

in any other occupation, nor does the contract stipulate that the accident insured against must happen whilst the assured was acting or engaged in his employment as a locomotive engineer. On the contrary, the company contracted, in plain, unequivocal terms, to insure the deceased against *any accident save those* embraced in the enumerated exceptions, and every injury caused by accident, save those specially excepted, is within the meaning of the policy and its conditions. It is not, therefore, a substantive defence to this action, even if the proof established the fact that the deceased, at the time of the injury, was endeavoring to perform the duty of a brakeman, or was acting out of the line of his own duty as engineer, or even contrary to the rules and regulations of his employers, for, unless he received the injury by wilfully exposing himself to unnecessary danger or peril within the meaning of the exception, the accident is covered by the policy. Nor is it a good defence that the accident was caused by the mere carelessness or negligence of the assured. In cases where the foundation of the action is an injury occasioned by the negligence of the defendant, and the liability of the latter grows out of such negligence, it is always a good defence to show contributing negligence on the part of the plaintiff, but here the liability is created by a contract, one of the chief objects of which was to protect the assured against his own mere carelessness or negligence. It has long been the universally settled construction of fire policies, that they cover a loss where the fire may be caused by the carelessness, negligence and want of due caution on the part of either the assured himself or of his servants, agents or tenants, because one of the principal objects the assured has in view in effecting an insurance, is protection against casualties arising from these causes. The same construction, for the same if not a stronger reason, must be given to a policy like the present, not only because of the character of the insurance effected, but because its positive language, and the terms of the exception, show that all accidents resulting from mere carelessness or negligence are

insured against. The observance of due care and diligence on the part of the assured, is no element of the contract on his part, and can in no way affect the right of action thereon.

The real defence, therefore, on this branch of the case, is narrowed down to the question, whether upon all the proof on the subject the death was caused by wilful exposure to unnecessary danger or peril, it being conceded this is the only clause of the exception that has any bearing upon the case. If this were a question of law, to be decided by the Court, we should not hesitate to adopt the views expressed by the Supreme Court of Wisconsin, in the case of *Schneider vs. The Provident Life Ins. Co.*, reported in 8 *Amer. Law Reg.*, 349. In that case the assured fell and was killed in the attempt to get upon a train of cars while in slow motion, and it was held by the Court, as matter of law, that it was not a case within the exception of "wilful and wanton exposure to unnecessary danger." That case in its circumstances is not distinguishable from this. It is a common practice with persons employed on railroads and engaged in the management of trains to pass from car to car, while the train is in motion, and although the duty of the engineer is more particularly confined to the locomotive and its management, yet if he does not do so himself he sees others almost constantly passing from one car to another without injury. If in this case he thought it necessary the brakes of the attached car should be put on, in order to check the speed on the descending grade, and there was no brakeman there to do it, we cannot suppose he thought, or that a prudent man under the same circumstances would have thought, he was placing himself in the way of almost inevitable death by attempting to pass from the tender of the engine to the car for that purpose, whilst the train was moving at the slow rate of eight miles per hour. It is impossible to characterize this act as a wilful exposure to unnecessary danger or peril. The fact that he slipped and fell in so doing, shows it was an unusual and unexpected result attending the performance of

a usual and necessary act. His falling was an event which took place without his foresight or expectation, and therefore clearly an accident in the common acceptation of the word, and the resulting injury, therefore, within the plain meaning of the terms of his insurance, and not within the exception relied on. Such would be our conclusion if the question were left to our determination. But by the plaintiff's prayer the question in the very words of the exception was submitted to the finding of the jury, and their finding is against the insurers. There is therefore no ground of reversal on this branch of the case.

2d. By the second condition of the policy it is provided that "in the event of injury within the meaning of this policy occurring to the assured, he, or in case of his death, his legal representatives shall, *as soon thereafter as possible,* give notice in writing thereof to the company at their office in Chicago, *or to the agent* writing this policy, together with the full name, occupation and address of the assured, *with full particulars of the accident or injury.*" The construction of the terms " forthwith " and " as soon as possible," in a similar condition in a fire policy, with reference to notice and furnishing preliminary proof of loss, has been settled in this State by the decision in *Edwards vs. Balto. Fire Ins. Co*, 3 *Gill*, 187. " To give to them," say the Court, " their literal import would in almost every case of loss by fire that occurs, strip the assured of all hope for indemnity for the loss incurred, and policies of insurance against fire would, as to the insured, instead of being contracts of indemnity as they profess to be, become engines of fraud and injustice in the hands of the underwriters, and a recovery by the insured would be rarely indeed, if ever, practicable. Such a construction, therefore, has not been sanctioned by Courts of justice. The true meaning of these terms is *with due diligence or without unnecessary procrastination or delay, under all the circumstances of the case.*" The Court also there decide that in all ordinary cases these are questions to be determined by the jury, and accord-

ingly the plaintiff's prayer left it to the jury to find whether the proof of the death and loss was furnished to the defendant's agent as soon as possible thereafter, as shown by the papers offered in evidence by the defendant. By the terms of the condititon the notice is not simply a notice of the death, but was to be accompanied with full particulars of the accident, and was to be given either to the company or to the agent who signed the policy; and in other parts of the policy it is expressed that sufficient proof is to be furnished the company of the death, &c.

The accident and death happened on the 21st of July, 1866. The agent of the company, Mr. Leonard, who countersigned the policy, resided in the vicinity, at Mount Savage, but at the time was absent at Berkeley Springs, where he heard of the occurrence. Within less than a week after the accident, the widow reported the death to Mr. Leonard, and proceeded to obtain affidavits of the manner of its occurrence, one of which, made by herself, is dated the 18th of August, and two others are dated respectively the 28th of August and the 4th of September. These were received by Mr. Leonard, and duly forwarded to the company, at Chicago, about the latter date. Upon this evidence we are of opinion the Court properly left the question we are now considering to the jury, and if it were a matter of law our judgment thereon would coincide with the conclusion the jury must have reached, under the instruction on this subject which the Court gave them.

This disposes of the two main questions argued at bar, and also of the action of the Court on the two instructions contained in the fifth exception, in which we find no error to justify a reversal of the judgment. The sole question presented by the other exception requires but a brief notice.

In the first and second exceptions it appears that two letters, with accompanying parol proof, were offered by the plaintiff and admitted by the Court, the defendant excepting thereto. In the subsequent progress of the trial the plaintiff asked leave to withdraw these letters and this proof from the

consideration of the jury, and the Court allowed it to be done. To this the defendant excepted, by his third and fourth exceptions. The question then is, can a party who has offered testimony, oral or written, and induced the Court to admit it against the objection of the opposite party, afterwards, and before instructions are asked for, and before the case has been argued by counsel, on discovering the supposed error into which he and the Court had fallen, ask to have the same withdrawn from the jury, and is there any error in the Court's action of which the opposite party has the right to complain in allowing, and directing its withdrawal? In our opinion there is none, and the case falls directly within the decision in *Boone vs. Purnell,* 28 *Md.,* 607.

*Judgment affirmed.*