TERRELL, Justice.
Prior to February 20, 1960, Felice Dia-melio, petitioner, was employed for two and one-half years by Royal Castle Restaurant. He was a counterman and went to work on the last named day at 7:00 A.M. Generally he was relieved at 11:00 A.M., but on the day in question the relief man was unable to be on hand. It was Saturday and a busier day than usual. Petitioner worked at a grill cooking hamburgers, eggs and other delicacies most of the day. About 4:00 P.M. he began to feel “something funny” and “sweating and feeling cold.” He asked the manager to take over for him on the grill. He went to the rear of the restaurant, sat for a while, took a bowl of soup, and feeling better, returned to the grill and resumed his work.
After working for another hour or so, he began to feel ill again and asked for relief at the grill. His quitting time was 5 :00 P.M., but he left the restaurant about 5 :20 P.M. and went home. While he was sitting at home about one hour later, he was attacked by what was called an epileptic *9 seizure. He was hospitalized at Jackson Memorial Hospital where he was visited by Dr. Michael M. Gilbert and it was determined that he had a history of epilepsy for eight or nine years. The hospital records show that on the date in question petitioner was “in good health until tonight * * * headache late this P.M. Complained of chills with supper then had ‘grandmal seizure.’ ” While in the hospital and on bed rest, the resident physicians observed two more grandmal seizures by the claimant.
Claim was filed for compensation benefits and a hearing was held by the deputy commissioner of the Florida Industrial Commission, after which the deputy commissioner entered an order holding that the claimant had “suffered an accident arising out of and in the course of his employment on February 20, 1960,” and ordered payment of compensation benefits, expert witness fees and attorneys fees to claimant’s counsel. On review by the full commission the order of the deputy commissioner was reversed on the ground that “in the instant cause there has been no showing whatsoever that the claimant sustained an injury by accident which arose out of and in the course of his employment.”
There was a motion to dismiss because the Florida Industrial Commission was not made a party defendant but a motion to amend by adding the Florida Industrial Commission as a party defendant was seasonably made and should have been granted. At any rate, it may have been said to have cured the error.
We are importuned by certiorari to review and reverse the order of the full commission.
The sole question for determination is whether the finding of the deputy commissioner that the employee suffered an accident arising out of and in the course of his employment was supported by competent and substantial evidence.
The evidence on the point consists of that of the petitioner and Dr. Michael Gilbert. It is short and the pertinent part will be' quoted. The petitioner whose evidence is unrebutted testified as follows:
“A. I had a grill full of hamburgers and I felt something funny and I fell off.
“Q. Did you feel anything unusual?
“A. Yes, sir. I started sweating and feeling cold and the heat got me.
“Q. Do you not usually sweat fixing hamburgers ?
“A. Not like that day.
“Q. You said you felt cold?
“A. Yes, sir. I was wringing wet and I was cold and warm.
“Q. Did you ask to go home or anything at that time?
“A. I asked for the manager. He come over and I says, ‘You better take over.’
“I says, T feel very sick.’
“He says, ‘What is the matter?’ and I said, T don’t know.’
“So, he took over, because he is a good grill man, also.
“Q. Let me clear up one thing. Ordinarily, there is a third man coming in at 11:00 o’clock that takes over?
“A. Yes, sir.
“Q. Do you remember what happened?
“A. This man couldn’t hold it up.
“Q. Did he try to hold it up ? Did he do some work?
“A. No, sir.” (Tr. 9, 10)
Petitioner further testified:
“Q. What does it feel like over this grill, Mr. Diamelio?
“A. It feels like you have got fire under you. It is on all day,, over the stoop and grill.
*10 “Q. Was it light or heavy that day ?
“A. That day is the busiest of the week.” (Tr. 31)
Dr. Gilbert was the only doctor who testified and his testimony was based on reasonable medical probability and is as follows :
“Q. (By Mr. Rappaport) Is there a relationship between this history that this man gave you of exhaustion and working over a hot grill and the occurrence of this seizure ?
“A. It is generally accepted medically that overexertion and fatigue can precipitate an epileptic seizure.
“Q. Is it your opinion, Doctor, within reasonable medical probability that if this man had never before felt these type of pains or exhaustions during the course of his employment on a grill where he had been unrelieved, except for the time that he felt ill, that there could be a direct relationship between this feeling of hot and cold chills and vertigo from fatigue, as he stated, and the resulting seizure?
“A. Well, yes, I think that the state he was in precipitated that particular seizure.” (Tr. 44)
Such was the principal testimony on which the deputy commissioner based his judgment that the claimant suffered an accident arising out of and in the course of his employment, for which he awarded compensation as heretofore stated.
In Alexander Orr, Jr., Inc. v. Florida Industrial Commission, 1937, 129 Fla. 369, 176 So. 172, 173, in holding that a sunstroke was compensable as an injury by accident, this court adopted the following rule:
“ ‘If the heat exhaustion arose out of the employment, as well as in its course, we think it is clear that any harmful effect upon the physical structure of the body of the employee, which was a proximate result of it, is an accident under our statute. * * * In connection with the sort of accident here involved, the principle to which most authorities give assent is that the harmful condition does arise out of the employment, if, in the performance of the duties for which he was engaged, in the manner required or contemplated by the employer, it is necessary for the employee to expose himself to a danger, materially in excess of that to which people commonly in that locality are exposed, when not situated as he is when thus performing his service, and that such excessive exposure may be found to have been the direct cause of the injury, though operating upon other conditions of common exposure. * *
“ ‘That principle has been specifically thus applied to sunstroke or heat prostration or heat exhaustion in many varying conditions. The authorities in the main adopt and apply it substantially as we have thus stated. It would serve no good purpose to refer to the discussions and various applications of the principle. Many cases are analyzed in texts and notes as follows: 1 Schneider’s Workmen’s Compensation Law (2d Ed.) pp. 701 to 710; 1 Honnold’s Workmen’s Compensation, p. 428; 13 A.L.R. 979; 53 A.L.R. 1085; 46 A.L.R. 1218; 25 A.L.R. 147; 16 A.L.R. 1038, 1039.’ ”
For a recent restatement of-this rule and further citations of authorities see Victor Wine & Liquor, Inc. v. Beasley, Fla.1962, 141 So.2d 581, 588.
When the elements shown by the evidence of the claimant and Dr. Gilbert are properly synthesized, it seems to me that a strong showing of an accident arising in the course of employment was made in support of the claimant’s contention. When this showing is fortified by the statutory requirement that all doubts be resolved in favor of the claimant, his position is further strengthened. The deputy commissioner thought the evidence was sufficient to support the claim *11 and the full commission did nothing more than pit its judgment as to competency and sufficiency of the evidence against that of the deputy commissioner which it is not permitted to do.
The deputy commissioner saw the witnesses, heard them testify; he saw the claimant and knew of his illness, knew the situation and was in better position than anyone to draw such deductions from the evidence as were essential to a proper determination of the cause and effect of the claimant’s illness. The fact that the deputy commissioner is in possession of the elements is the reason that the law makes him the sole judge of the weight and probative value of the evidence. The evidence does not have to prove the deputy’s finding beyond a reasonable doubt. In many cases it could not do so, it must be shown by reasonable deductions from the evidence which must be competent and substantial and accord with reason.
Neither party has raised any question of apportionment because of the pre-existing condition. Section 440.02(19), Florida Statutes, F.S.A. Nothing in this opinion shall be construed as dealing with this problem.
Dr. Gilbert testified positively, “I think that the state he was in precipitated that particular seizure.” “The state he was in” was the doctor’s deduction from his examination of petitioner and the testimony'of petitioner as to the heat over the grill, the way he sweated and “fell out” and the long day he spent at his employment. There was, of course, an element of doubt in all of this but if there ever were a case to resolve that element in favor of the petitioner, this is it. Medical science is not an exact science and many questions turning on the answer of the medical practitioner must be predicated on deductions or theory or both. This is why the law requires that doubts be resolved in favor of the claimant.
For the reasons above stated, the petition for writ of certiorari is granted and the order of the full commission reversed with directions that this cause be remanded to the deputy commissioner for further proceedings consistent with this opinion.
It is so ordered.
ROBERTS, C. J., and THORNAL and HOBSON (Ret.), JJ., concur.
THOMAS, J., dissents.