825 A.2d 365

**Vernell HARRIS**

v.

**BOARD OF EDUCATION OF HOWARD COUNTY.**

No. 43, Sept. Term, 2002.

Court of Appeals of Maryland.

June 6, 2003.

Anne E. Hoke (Ingerman & Horwitz, L.L.P., on brief), Baltimore, for petitioner.

Matt M. Paavola, M. Crawford Keenan, Maryland Trial Lawyers Association, Baltimore, amicus curiae for petitioner.

Daniel H. Scherr (Reese and Carney, L.L.P., on brief), Columbia, for respondent.

David A. Skomba, Michael W. Prokopik, Franklin & Prokopik, Baltimore, Brief & Appendix of Amici Curiae, Maryland Association of Board of Education Workers' Compensation Group Self–Insurance Fund, Maryland Association of Commu-

nity Services Workers' Compensation Self–Insurance Group and the Rockwood Casualty Insurance Company, amici curiae for respondent.

William A Kress, Semmes, Bowen & Semmes, Baltimore, Carmine G. D'Alessandro, Injured Workers' Insurance Fund, Towson, Brief of Amici Curiae, Baltimore Gas and Electric Company, Injured Workers' Insurance Fund, Johns Hopkins Medical System, Johns Hopkins University, The Maryland Chapters of Associated Builders and Contractors, The Maryland Self–Insurers' and Employers' Compensation Association, Inc. and The University of Maryland Medical System Corporation.

David S. Bliden, Executive Director, Maryland Association of Counties Incorporated, Annapolis, Brief of Amicus Curiae Maryland Association of Counties, Inc.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this workers' compensation case for the purpose of reconsidering one particular line of this Court's opinions which have held that, for an injury to be covered as an "accidental injury" under the Workers' Compensation Act, Maryland Code (1991, 1999 Repl.Vol.), § 9–101 *et seq.* of the Labor and Employment Article, the injury must result from "unusual activity." The "unusual activity" requirement is not supported by the language of the Workers' Compensation Act, is contrary to other opinions by this Court, is a distinct minority view in the nation, and contravenes the liberal purposes of the Workers' Compensation Act. We shall overrule the line of cases which injected the "unusual activity" requirement into the definition of "accidental injury."

I.

In January 1999, the petitioner, Vernell Harris, was fifty-eight years old and had been employed by the respondent, the

Howard County Board of Education, for twelve years at Wilde Lake High School, as a "Food and Nutritional Service Assistant I." Ms. Harris's duties included preparing lunches for the students, tending to the cash register, cleaning the kitchen area, and laundering all linens used throughout the day. It is undisputed that Ms. Harris's regular work involved lifting boxes of frozen food weighing approximately thirty-five pounds from the freezer and carrying them to the appropriate food preparation area.[1]

On the day that she incurred her injury, January 25, 1999, Ms. Harris was doing laundry with a co-worker, as she typically did at the end of her workday. The two women opened a forty-five pound box of laundry detergent, but they

---

1. The Howard County Public School System's job description for a "Food and Nutrition Service Assistant I" provides, in relevant part, as follows:

   "JOB TITLE: FOOD AND NUTRITION SERVICE ASSISTANT I
   "DEFINITION
   * * *
   "An employee in this classification is required to:
      a.  Assemble, set-up and serve high quality nutritious meals to students and adults at an elementary or secondary school
      b.  Clean and sanitize all kitchen equipment at the work facility at the completion of meal service
      c.  Perform all duties as assigned and work as scheduled.
   * * *
   "EXAMPLES OF WORK
   "Assists with the preparation of hot and cold foods and beverages; sets up hot and cold food counter for serving; pre-portions food items; properly supplies counter with food, plates, utensils, napkins and condiments; serves food to students and faculty, maintaining correct portioning; may act as cashier and receives money for food served in cafeteria; maintains an accurate account of cash collected and lunches/milk served; sweeps floors; washes and sanitizes dishes, pots, pans and other utensils; cleans kitchen equipment and work areas; assists in the receiving, unpacking and storage of food and supplies; operates all kitchen equipment; and performs other duties as assigned.
   "REQUIRED KNOWLEDGE, SKILLS AND ABILITIES
   * * *
   "Ability to:
      a. . . .
      b.  assist with preparation of hot and cold foods and beverages . . .
      d.  use and clean all kitchen equipment . . .
      g.  lift bulk weight of up to 55 lbs. . . ."

found that the box was full of cockroaches. They immediately closed the box to prevent the insects from contaminating the food preparation area and moved the box outside. Because the box was very heavy, they could not lift it. Instead, Ms. Harris and her assistant dragged the box out of the laundry room by sliding it through the kitchen and out of a side door. Once outside, they removed the bag of soap powder from the box. This required some pulling back and forth on their part. Ms. Harris pulled on the box while her assistant pulled out the soap powder bag. Once the soap powder was out of the box, they took the bag back inside to the laundry room and placed it in a different box that was elevated only about half as high as the original box.

After bending down to scoop some soap detergent into a cup, Ms. Harris bent down a second time to tie up the bag of soap powder. At that point, her back "cracked" and she screamed. Ms. Harris was unable to stand upright, and, when a co-worker brought her a chair, she was unable to sit. She appeared to be in excruciating pain. With the aid of another co-worker, Ms. Harris walked to the cafeteria manager's office who gave her an incident form authorizing her to see a doctor at a nearby medical office.

Ms. Harris was seen by Dr. Prudence Jackson at the Concentra Medical Center later that afternoon. Dr. Jackson testified that it was her expert medical opinion, within a reasonable degree of medical certainty, that dragging the heavy box of laundry soap outside caused Ms. Harris's back injury.

In August 1999, Ms. Harris filed a claim with the Workers' Compensation Commission, alleging that she was disabled as a result of her back injury on January 25, 1999. After a hearing, the Workers' Compensation Commission issued an order finding that Ms. Harris had sustained an accidental injury arising out of and in the course of her employment and was entitled to compensation.

The employer, the Howard County Board of Education, filed in the Circuit Court for Howard County an action for

judicial review. At the jury trial in December 2000, Ms. Harris moved for judgment at the close of the employer's case-in-chief and at the close of all evidence on the ground that, as a matter of law, her injury was compensable under the Maryland Workers' Compensation Act. The trial judge denied both motions on the ground that there was sufficient contradictory evidence, as to whether the injury arose out of "unusual activity," for the issue to go to the jury. Ultimately, the jury returned a verdict in favor of the employer. Thereafter, Ms. Harris filed a motion for judgment notwithstanding the verdict or for a new trial, but the motion was denied.

Ms. Harris took an appeal to the Court of Special Appeals which, in an unreported opinion, affirmed. The intermediate appellate court, relying upon *Sargent v. Board of Education, Baltimore County,* 49 Md.App. 577, 580–582, 433 A.2d 1209, 1211–1212 (1981), held that there was sufficient evidence that Ms. Harris's injury did not arise out of "unusual activity" to sustain the jury's verdict. The appellate court stated:

> "Clearly, there was sufficient evidence to allow appellee's case to proceed to the jury. Although dragging the detergent box outside of the kitchen was not a task which was performed with regular frequency, the nature of the task was similar to the chores performed by appellant during a typical work day, satisfying the first prong of the *Sargent* test. During its case-in-chief, appellee presented evidence that lifting boxes, weighing between twenty-seven and thirty-six pounds, was a normal occurrence, even if dragging a soap box was not. Similarly, with regard to the second prong of the test, appellee presented sufficient evidence that the tasks were performed with relative frequency: appellant was to lift the boxes almost every day during the completion of her duties." [2]

---

**2.** As pointed out above, the Court of Special Appeals in this case primarily relied upon that court's earlier opinion in the *Sargent* case. We note that the Court of Special Appeals in *Sargent,* as well as in other opinions by the intermediate appellate court, was simply endeavoring to apply principles set forth in Court of Appeals' opinions. Judge Wilner

Ms. Harris filed in this Court a petition for a writ of certiorari, requesting in her first question presented that we "revisit the definition of the word 'accident' within the meaning of the Maryland Workers' Compensation Act" and that we "restore the use of the meaning this Court originally gave the word: an untoward event which was neither expected nor intended-referring to the injury itself, not the activity which resulted in the injury, and thus consonate Maryland law with that of the vast majority of the states...." In her second question presented, Ms. Harris argued that, if this Court were to retain the "unusual activity" requirement, we should hold that the activity in the case at bar was "unusual." We granted the petition, *Harris v. Board of Education of Howard County*, 369 Md. 659, 802 A.2d 438 (2002), and we shall reverse. In light of our holding on the first question presented, we do not reach the second question.

## II.

Maryland was the first state in the nation to enact a workers' compensation statute. *See* Ch. 139 of the Acts of 1902; *Honaker v. W.C. & A.N. Miller Development Co.*, 285 Md. 216, 223 n. 2, 401 A.2d 1013, 1016–1017 n. 2 (1979).[3] The

for the Court of Special Appeals in *Sargent* thus explained (49 Md.App. at 580–581, 433 A.2d at 1211):

"While the majority of jurisdictions consider an injury to be accidental if it was the unexpected result of the routine performance of the employee's duties, the Maryland Court of Appeals has chosen to adhere to a much narrower view. Under this more restrictive view, in order for an injury sustained during the course of his employment to be 'accidental,' and thus compensable, it must result 'from some *unusual* strain, exertion or condition in the employment.' (Emphasis added.) *Stancliff v. H.B. Davis Co.*, 208 Md. 191, 198, 117 A.2d 577, 581 (1955). *See Geipe, Inc. v. Collett*, 172 Md. 165, 190 A. 836 (1937); *Schemmel v. Gatch & Sons*, 164 Md. 671, 166 A. 39 (1933); *State Roads Commission v. Reynolds*, 164 Md. 539, 165 A. 475 (1933).... We, of course, are not at liberty to depart from that restrictive view, which was established by the Court of Appeals."

3. The Court of Common Pleas of Baltimore City, a trial court, held that the 1902 statute violated Article 5 and Article 19 of the Maryland Declaration of Rights. *Franklin v. United Railways and Electric Compa-*

current Maryland Workers' Compensation Act was initially enacted by Ch. 800 of the Acts of 1914. As first enacted, the 1914 Workers' Compensation Act compensated employees for "accidental injuries" occurring in "extra-hazardous" employment, but the Act excluded "occupational diseases." [4] The coverage of "occupational diseases" began in 1939, and the "extra-hazardous" language was deleted by Ch. 741 of the Acts of 1970.[5]

The current Maryland Workers' Compensation Act, in § 9–101(b) of the Labor and Employment Article, defines "accidental personal injury" as follows:

" § 9–101. **Definitions.**

(a) *In general.*—In this title the following words have the meanings indicated.

(b) *Accidental personal injury.*—"Accidental personal injury" means:

---

*ny*, 2 Baltimore City Reports 309 (1904). Apparently no appeal to this Court was prosecuted in the *Franklin* case.

The General Assembly, by Ch. 153 of the Acts of 1910, enacted a limited workers' compensation statute for the coal mining and clay mining industries. This Court upheld the constitutionality of the 1910 statute in *American Coal Co. v. Allegany County*, 128 Md. 564, 98 A. 143 (1916).

**4.** The statute went on to delineate numerous types of employment which were deemed "extra-hazardous."

**5.** With regard to the coverage of occupational diseases, Judge Karwacki for the Court in *Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 77–78, 684 A.2d 1338, 1341 (1996) (citations and footnotes omitted), explained that

"twenty-five years of experience brought inevitable maturity to the Act, and the Legislature eventually recognized that accidents were not the sole cause of employee harm. By Chapter 465 of the Acts of 1939, certain occupational diseases were deemed compensable if contracted during the course of employment. The 1939 amendments to the Act entitled employees disabled or killed by specific enumerated occupational diseases to compensation 'as if such disablement or death were an injury by accident.' ... Prior to that time, occupational diseases were not compensable.... Eventually, the practice of enumerating specific diseases was abandoned, and all occupational diseases were, subject to certain conditions not here relevant, deemed compensable."

(1) an accidental injury that arises out of and in the course of employment;

(2) an injury caused by a willful or negligent act of a third person directed against a covered employee in the course of the employment of the covered employee; or

(3) a disease or infection that naturally results from an accidental injury that arises out of and in the course of employment, including:

(i) an occupational disease; and

(ii) frostbite or sunstroke caused by a weather condition."

\* \* \*

The above-quoted language contains no mention of "unusual activity." Under the plain language of the statute, what must be "accidental" is the *injury* and not the activity giving rise to the injury. The activity giving rise to the injury need only "arise[ ] out of and in the course of employment," and not be otherwise excluded by the Act. *See* Seidman, *"Accidental Means" In Workmen's Compensation,* 18 Md. L.Rev. 131 (1958).

As Judge John J. Parker stated for the federal Circuit Court of Appeals, Fourth Circuit, with regard to the same language in the Longshoremen's and Harbor Workers' Compensation Act, the statutory language "says nothing about unusual or extraordinary conditions; and there is no reasonable basis for reading such words into the statute." *Baltimore & O.R. Co. v. Clark,* 59 F.2d 595, 597 (4th Cir.1932). The Fourth Circuit in *Clark* refused to follow this Court's opinions in *Slacum v. Jolley,* 153 Md. 343, 138 A. 244 (1927), and *Miskowiak v. Bethlehem Steel Co.,* 156 Md. 690, 145 A. 199 (1929), which had added the "unusual activity" requirement to the Maryland Workers' Compensation Act.

■ The line of cases in this Court requiring that an accidental personal injury arise out of "unusual activity" for there to be coverage obviously adds a requirement not contained in the statutory language. That line of cases requires

both (1) that the accidental injury arise out of and in the course of employment and (2) that the accidental injury arise out of "unusual activity." Such cases cannot be reconciled with the often-repeated principle that this Court will "neither add nor delete words in order to give the statute a meaning not otherwise communicated by the language used," *Blind Industries v. Department of General Services,* 371 Md. 221, 231, 808 A.2d 782, 788 (2002). *See, e.g., Medex v. McCabe,* 372 Md. 28, 38, 811 A.2d 297, 303 (2002) ("We cannot modify an unambiguous statute, by adding or removing words"); *Dyer v. Otis Warren Real Estate,* 371 Md. 576, 585, 810 A.2d 938, 943 (2002) ("[F]or the petitioner's interpretation to be adopted, . . . there would need to be additional language added to [the statute]"); *Caffrey v. Dept. of Liquor Control for Montgomery County,* 370 Md. 272, 292, 805 A.2d 268, 279 (2002) (" '[A] plainly worded statute must be construed without forced or subtle interpretations designed to . . . limit the scope of its operation' "); *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 427 (2002) ("We neither add nor delete words to an unambiguous statute"); *In re Ryan S.,* 369 Md. 26, 56, 797 A.2d 39, 57 (2002) ("We refuse to read any broader the language of the Legislature, so . . . carefully constructed"); *Dept. of Environment v. Underwood,* 368 Md. 160, 184, 792 A.2d 1130, 1144 (2002) ("[W]e are bound to give effect to the entire [statute], neither adding, nor deleting, words") (internal quotation marks omitted); *Montrose Christian School v. Walsh,* 363 Md. 565, 595, 770 A.2d 111, 128–129 (2001) (to " 'insert the phrase . . . contended for by the petitioner, would be to re-draft the statute under the guise of construction,' " quoting *Davis v. State,* 294 Md. 370, 378, 451 A.2d 107, 111 (1982)).

### III.

#### A.

The plaintiff in the case at bar primarily relies upon the leading case of *Victory Sparkler & Specialty Co. v. Francks,* 147 Md. 368, 128 A. 635 (1925), which may be the most cited

Maryland case concerning the Workers' Compensation Act. *Victory Sparkler* was a tort action by Catherine Francks, an employee of a fireworks manufacturing plant, against her employer, the fireworks manufacturer. The plaintiff had become ill as "the result of the gradual contraction of a disease known as 'phosphorus poisoning,' caused by the inhalation of fumes and gases wrongfully and negligently permitted and allowed by the defendant to be collected in the place in which the ... plaintiff worked," *Victory Sparkler*, 147 Md. at 371, 128 A. at 635–636 (internal quotation marks omitted). "[D]uring the years 1921, 1922, 1923, or parts thereof, 'she gradually contracted [the] disease,'" 147 Md. at 378, 128 A. at 638. It was claimed, *inter alia*, that the employer failed "to supply proper appliances and equipment for the expulsion of the gases," and that the employer did not obtain competent employees to operate the equipment for expelling the fumes. *Ibid.*

The employer in *Victory Sparkler* defended the negligence action on the ground that Ms. Francks's injury was covered by the Workers' Compensation Act, that the employer was ready and able to pay her the compensation to which she was entitled under the Act, and that the Workers' Compensation Act was her exclusive remedy. The plaintiff replied that her illness "was not an accidental injury but an occupational disease, and so not within the Work[ers'] Compensation Act." 147 Md. at 378, 128 A. at 638. The Circuit Court for Caroline County agreed with the plaintiff, overruled the employer's defense, permitted the negligence action to be tried, and a judgment in favor of the plaintiff was rendered. Upon the employer's appeal, this Court unanimously reversed, holding as follows (147 Md. at 382–383, 128 A. at 640):

"The phosphorus poisoning of the girl was contracted in the course of and arising out of an hazardous employment, at a particular place and within a known and definite particular period of time, and in causal connection with the negligence of the employer, whose neglect and its effect were not foreseen or anticipated by her. She was accordingly entitled to compensation under the act, as is admitted

by the appellant, as well as its willingness to pay her compensation."

Judge Parke for the Court in *Victory Sparkler* began his discussion of the Workers' Compensation Act by pointing out that prior opinions had established that, aside from specific exceptions, the Act furnishes the remedy "in hazardous employments, in regard to *all injury* arising out of and in the course of employment." (147 Md. at 375, 128 A. at 637, emphasis added). With regard to the plaintiff's argument that the "Act is restricted in its operation to that distinct and separate class of injuries arising from accidents," and the plaintiff's reliance on a few out-of-state cases interpreting workers' compensation statutes narrowly, the *Victory Sparkler* opinion responded (147 Md. at 376–377, 128 A. at 637–638, emphasis added):

"This theory of the statute is at once confronted by the salient purpose of the act, to put an end to private controversy and to litigation. [The plaintiff's theory] splits apart the field of negligence in hazardous employments, and makes futile the law's pronouncement that it is the exclusive *remedy for every phase of extra-hazardous employment,* except as by its own terms specified.

\* \* \*

"The statutory definition of injury, which was made compensable without reference to neglect of employer or fault of worker, except when the injury was self-inflicted or the sole result of the intoxication of the employee, and the abolition of the fellow-servant rule, of the defenses of contributory negligence and assumption of risk, and the substitution of a regulated and certain compensation for damages, contribute convincingly to the conclusion that the legislative intent was to include within the act not only the newly created class of compensable injuries, but also *every injury which could be suffered by any worker in the course and arising out of the employment, for which there was then a subsisting right of action. E. Baggot Company v. Industrial Commission,* 290 Ill. 530, 125 N.E. 254. With this conception of the purpose

and effect of the act, the Legislature was consistent in making the prescribed liability of the employer and remedy of the employee exclusive *with respect to all injuries sustained in the hazardous employment.*

\* \* \*

"The decisions of other appellate tribunals, which have not reached our conclusion, were controlled by the wording of their own respective statutes, which will be found to be substantially different from the Maryland act either in phrasing, or in additional or in omitted provisions in respect to or affecting the subject under discussion. If the decisions of these courts were adopted, the Maryland act would undergo an amendment by judicial construction through engrafting upon it the effect of the particular provisions of the foreign acts."

Limiting accidental injury coverage to those accidental injuries arising out of unusual conditions cannot be reconciled with the breadth of the statute described in the above-quoted language.

Next, the Court in *Victory Sparkler* dealt with the plaintiff's argument that her illness was an occupational disease. The respondent in the case at bar asserts that the *Victory Sparkler* Court "did not consider . . . the breadth or limitations of the term 'accidental injury' because it was dealing with the negligent leak of a toxic substance into the work place atmosphere, clearly an extraordinary and unusual situation." (Respondent's brief at 10). In the following passage, however, the *Victory Sparkler* Court included an injury arising out of an employee's "common and regular task[s]" within the ambit of "accidental injuries" covered under the Act. The Court explained (147 Md. at 379–380, 128 A. at 638–639, emphasis added):

"An occupation or industry disease is one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it

is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, *per se,* but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and is in no accurate sense an occupation or industry disease. In this case, the occupation of the girl as an employee in a department of a manufactory of fireworks was simply a condition of her injury, whose cause was the definite negligence charged against the employer. The most that is warranted to be inferred from the allegations of fact in the declaration is that the phosphorus poisoning alleged was the gradual result of the negligence of the employer. As this negligence was a breach of duty to her, it was not to be foreseen or expected by the worker as something which would occur in the course of her employment. *The fact that she continued at her place of labor, in the doing of her common and regular task, makes it clear that the phosphorous poisoning happened without her design or expectation, and so her injury was accidental. Providence Life Ins. Co. v. Martin,* 32 Md. 310, 314, 315. . . .

\* \* \*

"It was by chance that employer did not use due care, and by chance that the vapor of phosphorus was where its noxious foreign particles could be inhaled by the girl. It was by chance that the inspired air carried these particles into her system, sickening her, and causing a necrosis of the jaw after fortuitously finding a lesion. The injury thus inflicted upon her body was accidental by every test of the word, and its accidental nature is not lost by calling the consequential results a disease. Nor can the fundamentally accidental nature of the injury be altered by the consideration that the infection was gradual throughout an indefinite period, as this simply implies a slow development of the malady, or that, instead of a single accidental injury, there was a succession or series of accidental injuries culminating in the same consequential results."

It is significant that the one prior Maryland case relied on by the *Victory Sparkler* Court for the above-quoted definition of "accidental injury" was *Providence Life Ins. Co. v. Martin,* 32 Md. 310, 314–315 (1870). In the *Providence Life Ins.* case, the employee was a locomotive engineer who was stepping between the tender and the first car of a moving train, and was directing the fireman who was backing up the train. The engineer slipped, fell between the moving tender and car, and was killed. He was not engaged in any unusual activity, and nothing unusual caused him to slip. Instead, his slipping was the result of his carelessness. "It [was] a common practice with persons employed on railroads and engaged in the management of trains to pass from car to car, while the train is in motion," 32 Md. at 314. In holding that the engineer incurred an "accidental injury" for purposes of an insurance policy, this Court stated (*id.* at 314–315, emphasis added):

"The fact that he slipped and fell in so doing, shows it was an unusual and unexpected result *attending the performance of a usual and necessary act.* His falling was an event which took place without his foresight or expectation, and therefore clearly an accident in the common acceptation of the word, and the resulting injury, therefore, within the plain meaning of the terms of his insurance. . . ."

Consequently, what must be unexpected, unintended, or unusual is the resulting injury and *not* the activity out of which the injury arises.

The *Victory Sparkler* Court later distinguished the noun "accident" from the adjective "accidental," explaining that "accidental injury" was broader than "accident" (147 Md. at 381, 128 A. at 639–640):

"It will be observed that the statutory definition of a compensable injury under the Maryland act is not that it is an 'accident,' or that it is an injury 'by accident' but that it must be 'accidental injuries.' The difference is important, as it marks the divergence between the thing or the event (*i.e.,* accident) and a quality or a condition (*i.e.,* accidental) of that thing or event. As the substantive carries the idea of something happening unexpectedly at a time and place,

the term 'accident' or 'injury by accident' has been consistently construed by the courts to embrace two different notions: the first is that of unexpectedness, and the second, that of an injury sustained on some definite occasion, whose date can be fixed with reasonable certainty. The adjective 'accidental' is not a technical term but a common one whose popular usage would not necessarily mean that the words 'accidental injuries' indicated the existence of an accident, but rather the idea that the injury was either unintended or unexpected. *See* 25 *Harvard Law Review,* pp. 338, 342. In the term 'accidental injuries,' the substantive 'injuries' expresses the notion of the thing or event, *i.e.,* the wrong or damage done to the person; while 'accidental' qualifies and describes the noun by ascribing to 'injuries' a quality or condition of happening or coming by chance or without design, taking place unexpectedly or unintentionally."

The Court in the above passage was specifically addressing the employee's argument that her injuries were outside the scope of the Act because the Act only covers "accidents." The *Victory Sparkler* Court responded by pointing out that the Act covers "accidental injuries," not just "accidents." The Court went on to define the adjective "accidental" in the above-quoted passage. In the case at bar, Ms. Harris' injuries are clearly within *Victory Sparkler*'s definition of "accidental injuries," which requires that the *injuries* happen "by chance or without design, taking place unexpectedly or unintentionally." *Victory Sparkler,* 147 Md. at 381, 128 A. at 640. This language was also used to ensure that the injury did not fit within the Act's two express exceptions to compensation, namely: (1) injuries "occasioned by the wilful intention of the injured employee" and (2) injuries "result[ing] from the intoxication of the injured employee while on duty." *Victory Sparkler,* 147 Md. at 374, 128 A. at 637. In the instant case, Ms. Harris's injuries occurred by chance and were completely unexpected and unintentional. They were neither wilfully self-inflicted nor the result of being intoxicated while on duty.

The Court in *Victory Sparkler* concluded as follows (147 Md. at 382, 128 A. at 640):

"The Maryland act is remedial and should receive a liberal construction so as to give to it the most beneficial operation; and when it contains positive direction that should 'be so interpreted and construed to effectuate its general purpose,' the Court must act under the compulsion of this mandate, and not disappoint an explicit provision, plainly expressed. . . ."

The requirement that an accidental injury, arising out of and in the course of employment, must also arise out of unusual activity for there to be coverage, directly conflicts with this "mandate" set forth in *Victory Sparkler*. Instead of a "liberal construction so as to give to it the most beneficial operation," the respondent's position makes the Maryland Act the most restrictive in the nation.

The first opinion by this Court relied on by the respondent is *Standard Gas Equipment Corp. v. Baldwin*, 152 Md. 321, 136 A. 644 (1927). *Standard Gas Equipment* was a workers' compensation action and not a tort action. Nevertheless, like *Victory Sparkler*, the issue in *Standard Gas Equipment* was not whether an injury resulting from a particular unintended event or condition was covered as an accidental injury. Instead, the issue was whether the employee's injury resulted from a pre-existing disease or from an accidental injury.

The employee in *Standard Gas Equipment* "was an iron moulder in the foundry room" of the corporation who worked "under unusual stress owing to the extreme heat," and who had pre-existing heart disease. 152 Md. at 323, 328, 136 A. at 645, 647. "The evidence [was] that the occupation was dangerous for a man with [the employee's] disease, of which, so far as the record shows, he was unaware." 152 Md. at 330, 136 A. at 647. On the day he died, the employee was carrying a ladle of molten iron from the furnace when some of it spilled, burning his clothing, left arm, left leg, and buttocks. He died on the way to the hospital because of "the dilation of his heart." There was some medical evidence that the death from heart disease was accelerated by the shock resulting from the burns, "although such shock would not have caused his death except for the condition of his heart." 152 Md. at 328, 136 A.

at 647. There was also evidence that working under the stress of the extreme heat in the foundry may have contributed to the death by heart disease. Although the majority of the Court reversed an award for the employee because of the form of the verdict, the majority awarded a new trial and held that, because of the above-summarized evidence, the jury could find that the death due to heart disease was an accidental injury covered by the Workers' Compensation Act. The dissenting opinion, however, took the position that any "slight exertion" would have caused the employee's death from heart disease, that "his employment required him to work in [the] heat," that this was "merely a common incident of [the] employment," and that his death did not "aris[e] out of and in the course of [his] employment" but resulted from an "anterior" disease. 152 Md. at 331, 136 A. at 648.

Nothing in the Court's *Standard Gas Equipment* opinion supports the view that an injury resulting from an unintended event or condition, which arises out of and in the course of employment, is not a covered accidental injury. The issue in *Standard Gas Equipment* was whether the employee died from a pre-existing heart disease or from an injury arising out of and in the course of employment. The Court in *Standard Gas Equipment* was simply setting forth a theory by which the employee's death might not entirely be the result of a pre-existing disease. As the dissent in *Standard Gas Equipment* pointed out, the Court was willing to allow a jury to find that the employee's injury was accidental, even though his disease "existed wholly independent of and anterior to the hiring by his employer." 152 Md. at 331, 136 A. at 648.

The next case relied on by the respondent is *Slacum v. Jolley, supra,* 153 Md. 343, 138 A. 244. *Slacum* appears to be the first opinion of this Court which injected into the definition of "accidental injury" a restrictive requirement that the injury, to be covered, must result from "unusual activity." In *Slacum,* the employee, Mr. Jolley, was a bus driver who became ill and died after driving a bus on a hot June day. The Court in *Slacum* stated (153 Md. at 351, 138 A. at 248, emphasis added):

" 'But to entitle the claimant to compensation, it was essential that there be at least some evidence that her husband died of heat stroke or heat prostration and that such injury was occasioned by *some unusual and extraordinary condition in his employment* not naturally and ordinarily incident thereto and there is no such evidence in this case.' "

The *Slacum* opinion cited no case, in Maryland or elsewhere, for the above-quoted statement. In fact, except for a few cases on unrelated procedural issues, the *Slacum* opinion cited no case-law whatsoever.

As previously indicated, the decision in *Slacum v. Jolley* represents an extreme minority view and has been criticized. *See, e.g., Baltimore & O.R. Co. v. Clark, supra,* 59 F.2d at 597. The notion that an injury or death of an employee, caused by a continuing heat condition in the place of employment, is not an accidental injury arising out of the employment, is contrary to the plain meaning of the term "accidental injury."

The first case after *Slacum v. Jolley* to apply the *Slacum* holding was *Miskowiak v. Bethlehem Steel Co., supra,* 156 Md. 690, 145 A. 199. *Miskowiak* involved the death of an employee occasioned by a normal continuing heat condition in the place of employment, and the Court held that the death "was not compensable under the rule announced in *Slacum v. Jolley . . . .*" 156 Md. at 696, 145 A. at 201. The *Miskowiak* opinion neither relied upon nor cited any authority other than *Slacum.*

The initial Maryland case to apply the "unusual condition or strain" requirement to an injury similar to that in the present case was *Atlantic Coast Shipping Co. v. Stasiak,* 158 Md. 349, 148 A. 452 (1930). The employee Michael Stasiak was a stevedore employed by the Atlantic Coast Shipping Company, and was working for his employer on a pier owned by the Western Maryland Railway Company. While loading tin plate onto trucks, along with other stevedores, Mr. Stasiak felt sudden pain. An examination disclosed that he suffered a hernia from the lifting, and an operation was required to

repair it. This Court reversed a workers' compensation award in favor of Mr. Stasiak, holding that the employee did not suffer an "accidental injury within the meaning of the Compensation Act" because "there was no evidence that the injury was caused by any unusual strain or by any condition not incident to claimant's employment." *Atlantic Coast Shipping Co. v. Stasiak, supra,* 158 Md. at 351, 148 A. at 453. The Court, in a very brief opinion, relied on the "unusual strain or condition" language in *Slacum v. Jolley, supra,* and *Miskowiak v. Bethlehem Steel Co., supra.* The opinion in *Stasiak,* 158 Md. at 351, 148 A. at 453, said that *Victory Sparkler Co. v. Francks, supra,* and *Standard Gas Equipment Corp. v. Baldwin, supra,* "are not controlling, as the facts are distinguishable."

The opinions in *Slacum, Miskowiak,* and *Atlantic Coast Shipping Co. v. Stasiak,* have spawned a line of cases holding that, to be an accidental personal injury covered by the Workers' Compensation Act, the injury must not only arise out of and in the course of employment, but it must also result from an "unusual condition or strain." *See, e.g., Rieger v. Wash. Sub. San. Comm.,* 211 Md. 214, 215, 216, 126 A.2d 598, 599 (1956) (the claimant suffered a back injury from tightening a large bolt "with a three-foot box wrench," and the Court stated that "not all injuries arising out of and in the course of employment are compensable"); *Caled Products Co. v. Sausser,* 199 Md. 514, 517, 86 A.2d 904, 905 (1952) (the claimant's lifting of a box caused a back injury, but compensation was denied because "the sudden and unexpected rupture of some portion of the internal structure of the body . . . is an 'accidental injury' . . . only when it results from some unusual strain . . . or some unusual condition in the employment"); *Kelly–Springfield Tire Co. v. Daniels,* 199 Md. 156, 161, 85 A.2d 795, 797 (1952) (acknowledging that the Maryland requirement of "unusual" activity is not followed elsewhere in the United States or England); *Jackson v. Ferree,* 173 Md. 400, 196 A. 107 (1938) (a mechanic was putting a wheel on a truck when the strain caused a hernia, and the Court held that there was no coverage because the activity was not unusual); *Heil v.*

*Linck,* 170 Md. 640, 642, 185 A. 555, 556 (1936) (the employee was lifting "a fore quarter of beef weighing about 160 pounds," and shortly afterwards he died; the Court held that the death was not caused by unusual activity and thus was not compensable).

### B.

If the decisions of this Court had uniformly required that an injury, arising out of and in the course of employment, must also result from unusual activity in order to be covered by the Workers' Compensation Act, a not unreasonable argument could be made that our erroneous insertion of language into the statute had become too ingrained to be corrected by judicial decision and that any correction should be made by the Legislature. Our decisions, however, have not been uniform or consistent. We have on numerous occasions held that accidental injuries were compensable even though they did not result from unusual activities.

The decision in *Baltimore v. Schwind,* 175 Md. 60, 199 A. 853 (1938), relied on by the petitioner Harris, clearly supports coverage in the case at bar. In *Schwind,* a school janitress suffered a paralytic stroke upon moving a long and unwieldy ladder which had fallen and needed to be moved quickly. As the respondent points out, the *Schwind* Court stated, 175 Md. at 63, 199 A. at 855 (emphasis added), that "the paralysis which developed as a causal consequence of the rupture of a blood vessel by the claimant, *in her unusual effort* to lift and place a ... ladder, must be accepted as an accidental injury arising out of and in the course of her employment within the meaning of the statute." The respondent capitalizes upon this language as support for the requirement that an unusual activity or condition in the workplace must be present in order to have a compensable accidental injury under the Act. The janitress in *Schwind,* however, encountered the same type of situation that Ms. Harris did in the present case. As the *Schwind* Court explained, 175 Md. at 64–65, 199 A. at 855 (emphasis added), the janitress's injury

"was *an untoward event which she neither expected nor intended.* The unforeseen mishap took place in the course of her employment as janitress. Her duties required her ... to do the common work of a janitress. It was while she was so engaged that she found it necessary, on account of the delay of the janitor in coming to do the work, and the immediate need of the women teachers to go to the dressing room, to act in the emergency thus created by attempting to raise the ladder and put it out of the way. Although this was not strictly within the ordinary duties of her service, yet this sphere must be determined upon a general survey of the nature of the employment, its conditions, obligations and incidents. She was hired to keep the premises fit for use, and, although the fall of the ladder, and its breaking the glass of the transom and scattering the fragments on the floor, were an unusual occurrence, *it was unquestionably her work to remove the glass and get the room in condition for use,* and it was in natural and reasonable connection with the proper performance of this work for the janitress to move the ladder, and the court cannot say as a matter of law that her act was in any way inconsistent with her continuing within her employment. The act was not done for the servant's purpose, but her conduct was on her master's account, and as janitress, and any peril which she thereby encountered, even if in consequence of her negligence or carelessness, if directly or indirectly involved by her contract of service, would be an incident of and within the scope of her employment. At the time of the accident, the claimant had hardening of the arteries and her physical condition was not good. Although the paralysis might not have happened if it had not been for her physical condition, yet this does not bar compensation, as there are facts and circumstances which tend to prove that she was not made ill or sustained the paralysis from natural causes, but that the paralysis was the result of *an unusual and sudden strain or wrench unexpectedly suffered by her in the course and arising out of her employment.*"

It is noteworthy that the Court in *Schwind* used the words "unusual and sudden strain or wrench" to describe the injury suffered by Ms. Schwind and not the activity of moving the ladder.

■ If the words "Ms. Harris" are substituted for the word "janitress," the above-quoted passage would be applicable to this case. Like the employee in *Schwind*, Ms. Harris's injury was an "untoward event which she neither expected nor intended." *Schwind*, 175 Md. at 64, 199 A. at 855. Just as in *Schwind*, "the unforeseen mishap took place in the course of her employment." *Ibid*. Laundering all linens was part of Ms. Harris's work as a Food and Nutritional Service Assistant, and it was while she was so engaged that she found it imperative, on account of the necessity to preserve the cleanliness of her work station, "to act in the emergency thus created" by moving the detergent box away from the food preparation area. *Ibid*. Although moving the detergent box outside "was not strictly within the ordinary duties of her service," whether or not an activity fits within the scope of ordinary duties "must be determined upon a general survey of the nature of the employment, its conditions, obligations and incidents." *Ibid*. She was hired, *inter alia*, to launder the linens, and, although the detergent box being filled with insects was an "unusual occurrence, it was unquestionably her work" to remove the contaminated detergent box to an area where it would not affect the cleanliness of the food preparation area. *Ibid*. It had a "natural and reasonable connection with the proper performance of this work" for Ms. Harris to move the detergent box. *Ibid*. "The act was not done for [Ms. Harris's] purpose, but her conduct was on her [employer's] account, and as [a food service employee], and any peril which she thereby encountered, even if in consequence of her negligence or carelessness, if directly or indirectly involved by her contract of service, would be an incident of and within the scope of her employment." *Ibid*.

Under *Schwind*, an injury is an "accidental injury" if it is the result of an "untoward event which [the employee] neither expected nor intended." *Schwind*, 175 Md. at 64, 199 A. at

855. Applying this principle to the present case clearly mandates coverage.

Another case affirming an accidental injury award of compensation, even though the employee's injury did not result from unusual activity, was *Foble v. Knefely,* 176 Md. 474, 6 A.2d 48 (1939). In *Foble,* the employee's job was to operate a machine for sewing cuffs on shirts. The operation of the machine involved the repeated use of a "knee press," whereby the employee would press her knee against a plate, thus permitting the insertion of fabric. The machine had been adjusted so that the knee press was stiff to operate. The employee developed a bruise on her knee from operating the machine, and it became progressively worse. Finally, the employee was taken to a doctor, and subsequently her knee condition required an operation. In holding that the employee suffered an accidental injury within the meaning of the Workers' Compensation Act, this Court relied on a broad meaning of "accidental injury," pointing out that its holding was "consistent with the conclusion stated in *Victory Sparkler Co. v. Francks, supra,* that an injury may be accidental even though the conditions which caused it extended over a considerable period of time." *Foble v. Knefely, supra,* 176 Md. at 487, 6 A.2d at 53. In the same passage, the Court indicated that "unusual" was simply synonymous with, *e.g.,* such words as "unforeseen," "unexpected," "abrupt," or "unlooked for." The facts of *Foble v. Knefely* show that the injury was not the result of "unusual activity," and the Court did not even cite *Slacum, Miskowiak, Atlantic Coast Shipping Co. v. Stasiak,* or similar cases. The *Foble* Court's reliance was on *Victory Sparkler Co. v. Francks, supra.*

In *Baltimore & Ohio R.R. Co. v. Zapf,* 192 Md. 403, 64 A.2d 139 (1949), the employee worked in a rolling mill, operating equipment which lifted red hot axles, weighing about 325 pounds, so that they could be run back through rollers. When operating the equipment on one occasion, the employee felt a pain in his back which got worse over the next few days and which required medical treatment. Although the employer argued that "lifting the steel axle into the rollers . . . was his

[the employee's] usual work," 192 Md. at 409, 64 A.2d at 141, this Court upheld a workers' compensation award in favor of the employee, stating (192 Md. at 410, 64 A.2d at 142):

" 'The many cases in which the question has been considered afford no more definite or sufficient basis for that construction than that the rule is one of policy rather than law, and results from an effort to construe all parts of the statute so as to harmonize them and carry out its general intent. The word "accident" is usually considered in connection with the phrase "arising out of," and, where it seems clear that the injury arose "out of the employment," the tendency of the courts has been to give to the word "accidental" a liberal construction in harmony with the general intent of the act, so as to find the injury compensable.' *See also Mayor and City Council of Baltimore v. Schwind....*"

This Court has, on numerous occasions, upheld coverage under the Workers' Compensation Act for accidental injuries incurred in the course of work-related activities which were not "unusual." *See, e.g., Suburban Hosp. v. Kirson,* 362 Md. 140, 763 A.2d 185 (2000) (the employee fractured her right femur when she slipped and fell in the operating room while she was working as a nurse; she was deemed to have sustained a covered accidental injury arising out of and in the course of her employment); *Waters v. Pleasant Manor Nursing Home,* 361 Md. 82, 760 A.2d 663 (2000) (the claimant, a nursing assistant, sustained a back injury attempting to move a patient); *Mulready v. University Research Corp.* 360 Md. 51, 756 A.2d 575 (2000) (the employee, while away attending a meeting which was required by the employer, slipped and fell while bathing); *Buckler v. Willett Construction Co.,* 345 Md. .350, 352, 692 A.2d 449, 450 (1997) (the "claimant sustained a compensable accidental injury arising out of and in the course of his employment ... when he fell and injured his left hand"); *Montgomery County v. Wade,* 345 Md. 1, 690 A.2d 990 (1997) (a police officer, while driving her vehicle in a normal manner, was injured when another vehicle struck hers); *Alitalia Linee Aeree Italiane v. Tornillo,* 329 Md. 40, 617 A.2d 572 (1993) (upholding a workers' compensation award where an airline

employee was required by the employer to have a car for use at work as a condition of employment, and the employee suffered injuries on his drive home from work); *M.P. Moller Motor Car Co. v. Unger,* 166 Md. 198, 170 A. 777 (1934) (the employee was a foreman in a manufacturing plant, engaged in his usual work, when he was struck by a flying object); *Monumental Printing Co. v. Edell,* 163 Md. 551, 563–565, 164 A. 171, 175–176 (1933) (a pressman whose duties included putting heavy "forms" in position to go to press, strained his back while doing so). *See also Livering v. Richardson's Restaurant,* 374 Md. 566, 823 A.2d 687 (2003). The decisions in these cases cannot be reconciled with the notion that an injury must arise out of unusual activity in order to be compensable under the Workers' Compensation Act.

### C.

There is another line of Maryland cases which hold that the "unusual activity" requirement is pertinent only when there is no apparent causal connection between the accidental injury and the employment. In other words, under the opinions, the presence or absence of "unusual activity" is an aspect in the "arising out of the course of employment" analysis. Judge Markell for the Court in the often-cited opinion, *Perdue v. Brittingham,* 186 Md. 393, 402–403, 47 A.2d 491, 495–496 (1946), thus explained (emphasis added):

"It must always be shown that the injury arose not only 'in the course of [the] employment' but also 'out of the employment.' ... There must be a 'causal connection between the conditions under which the work is required to be performed and the resulting injury.' ... The causal connection may relate either (a) to the act or event, *e.g.,* a fall, which produces the injury or (b) to the consequences of the particular act or event. If there is other evidence that the work causes the act or event, *then it is immaterial how usual or trivial the act or event is,* or how unusual or abnormal the consequence.... If, however, there is no apparent causal connection between the work and the event, *e.g.,* a cerebral hemorrhage or an epileptic fit, then *unusual*

*or extraordinary conditions* of the employment, constituting a risk peculiar to the work, *may establish the causal connection* between the work and the injury . . . ."

For other cases reflecting this limited role of the "unusual activity" requirement, *see, e.g., Montgomery County v. Wade, supra,* 345 Md. at 10, 690 A.2d at 994 ("Where there is no causal connection between the work and the event giving rise to the injury, then unusual or extraordinary conditions of employment constituting a risk peculiar to the work may establish the requisite causal nexus"); *Scherr v. Miller,* 229 Md. 538, 543, 184 A.2d 916, 919 (1962) ("And if the causal connection between the injury and the employment is not apparent, 'then unusual . . . conditions of the employment, constituting risk peculiar to the work, may establish the causal connection"); *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 58, 158 A.2d 621, 624 (1960) (After citing, *inter alia, Perdue v. Brittingham, supra,* Chief Judge Brune for the Court stated: "The appellant states as the Maryland Rule that 'an injury is accidental only when it results from some unusual strain or exertion or some unusual condition in the employment' . . . . [The appellant] fails to refer to the circumstances under which the rule applies. . . . It does not apply where injury or death results from a fall or a similar accident"); *Kletz v. Nuway Distributors, Inc.,* 62 Md.App. 158, 164, 488 A.2d 978, 982 (1985) (quoting both *Perdue v. Brittingham, supra,* and *Scherr v. Miller, supra*); *Klein v. Terra Chemicals International,* 14 Md.App. 172, 176, 286 A.2d 568, 570 (1972) (In which Chief Judge Robert C. Murphy reiterated that, "if . . . the causal connection between the injury and the employment is not apparent, then unusual . . . conditions of the employment . . . may establish the causal connection between the work and the injury"). This line of cases is in direct conflict with the cases following *Slacum, Miskowiak, Atlantic Coast Shipping Co.,* and their progeny, which hold that, to be covered, an accidental personal injury must always arise out of unusual activity.

## D.

In still other cases, purporting to require that an injury arise out of unusual activity, this Court and the Court of Special Appeals have strained to label as "unusual" activities which appear to be entirely normal in the particular employments, and thus have upheld coverage. *See, e.g., Fisher Body Division v. Alston,* 252 Md. 51, 56–57, 249 A.2d 130, 134 (1969) ("The testimony concerning the injury . . . established that a gate was welded to the body of a car and it would not disengage. While the appellee [employee] was waiting for the foreman and another worker to help him, *which was the normal procedure,* he continued to pull at the gate and suddenly it came free and he twisted his back" (emphasis added)); *Bethlehem Steel Co. v. Golombieski,* 231 Md. 124, 128–131, 188 A.2d 923, 925–927 (1963) (a mechanical repairman had to pull harder than usual on a wrench to loosen a rusted bolt, and the activity was therefore deemed "unusual"); *State Roads Comm. v. Reynolds,* 164 Md. 539, 542, 165 A. 475, 476 (1933) (a state highway employee, whose "usual duties" included "trimming the roadside grass, patching small holes, cleaning drain pipes, keeping dirt from the shoulders, and clearing away limbs, trash, or other debris that may have fallen on the roadway," suffered a heart attack while picking up cobble stones from the road on a hot day, and the activity was deemed "unusual"); *Coal Co. v. Chisholm,* 163 Md. 49, 55, 161 A. 276, 279 (1932) (a coal miner was injured when lifting a rock, and the fact that the rock was larger than normal made the activity "unusual"); *Sargent v. Board of Education, Baltimore County, supra,* 49 Md.App. at 582–583, 433 A.2d at 1212 (1981) (annual cleaning of boilers, which was done every year, was deemed "unusual" because it was done only once per year).

## E.

As one text has pointed out, "[d]etermining whether a strain, exertion or condition of employment was 'unusual' constitutes one of the greatest legal battlegrounds in workers'

compensation litigation. In these frays, the word 'unusual' is pulled and tugged by the opposing sides in an effort to make it more or less elastic to suit the particular facts of the claim." Gilbert and Humphreys, *Maryland Workers' Compensation Handbook,* § 5.1–1, at 77 (1993).

In other areas of the law, where a judicially created standard has not been uniformly followed, has been inconsistently applied, and has treated differently persons who were similarly situated, this Court has not hesitated to change or abandon the standard. *See, e.g., Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 450–463, 601 A.2d 633, 647–654 (1992) (overruling a long line of cases which, in certain ill-defined types of tort actions, permitted the recovery of punitive damages on an "implied malice" basis); *Skok v. State,* 361 Md. 52, 66–78, 760 A.2d 647, 654–661 (2000) (overruling a multitude of cases, extending back to 1838, which had given an extremely narrow scope to the writ of error *coram nobis* ); *State v. Kanaras,* 357 Md. 170, 177–184, 742 A.2d 508, 512–516 (1999) (overruling a line of cases, decided over a 40–year period, which had misconstrued a statute so as to preclude appeals in actions to correct illegal sentences); *Boblitz v. Boblitz,* 296 Md. 242, 245–252, 462 A.2d 506, 507–511 (1983) (overruling numerous cases, going back to *Furstenburg v. Furstenburg,* 152 Md. 247, 249–253, 136 A. 534, 534–536 (1927), which had applied the doctrine of interspousal immunity in negligence cases, and which were based on a misinterpretation of the "Married Women's Act" first enacted in 1898, Maryland Code (1984, 1999 Repl.Vol.), §§ 4–203 *et seq.* of the Family Law Article); *State v. Hicks,* 285 Md. 310, 334–338, 403 A.2d 356, 368–371 (1979) (overruling cases which had interpreted a particular statute as being "directory" rather than mandatory).

The erroneous judicial insertion into the Workers' Compensation Act of the "unusual activity" requirement has not been uniformly followed by this Court, has been inconsistently applied, and has treated differently employees who were injured under similar circumstances. There are at least four different lines of Maryland Court of Appeals cases concerning the issue, each line conflicting with the others. Like the

judicially created standards that were overruled or changed in the above-cited cases, the "unusual activity" requirement for workers' compensation coverage should be abandoned.

## IV.

This Court has previously recognized that the line of Maryland cases, requiring that an injury arise out of "unusual activity" to be covered by the Workers' Compensation Act, is peculiar to Maryland. In *Kelly–Springfield Tire Co. v. Daniels, supra,* 199 Md. at 161, 85 A.2d at 797–798, after reviewing cases elsewhere, which follow the rule that any accidental personal injury arising out of and in the course of employment is covered, Judge Delaplaine for the Court stated:

"This broad rule, which has been adopted quite generally in the United States following the decisions in England, has not been fully accepted in Maryland. In this State the sudden and unexpected rupture of some portion of the internal structure of the body, or the failure of some essential function of the body, is held to be [an] accidental injury only when it results from some unusual strain or exertion of the employee or some unusual condition in the employment."

*See also, e.g., Stancliff v. H.B. Davis Co.,* 208 Md. 191, 199, 117 A.2d 577, 581 (1955) (pointing out that the "unusual activity" requirement is contrary to "the great weight of authority").

The wording of Maryland's Workers' Compensation Act is essentially the same as the wording of most workers' compensation statutes throughout this country. The American workers' compensation statutes, in turn, were based upon the English Workmen's Compensation Act of 1897, and, therefore, it is generally held that the English cases under that Act are entitled to great weight. Larson, *Larson's Workers' Compensation Law,* §§ 3.06 n. 5, 150.01[1] n. 1.

With regard to injuries arising out of and in the course of employment, based on particular unintended events or conditions, the leading case is *Fenton v. Thorley & Co., Ltd.,* [1903]

Law Rep.App. Cas. 443. In that case, Fenton injured himself while trying to turn a wheel in the course of his ordinary work. There was no slip, wrench or sudden jerk. In holding that the resulting injury was a compensable accident within the meaning of the English Workmen's Compensation Act of 1897,[6] Lord MacNaghten stated (*id.* at 448):

> "[T]he expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an untoward event which is not expected or designed."

At another point in the opinion, Lord MacNaghten explained (*id.* at 446–447):

> "If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap, in ordinary parlance, would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight or trying to move something too heavy for him.

> \* \* \*

> It does seem to me extraordinary that anybody should suppose that when the advantage of insurance against accident at their Employers' expense was being conferred on workmen, Parliament could have intended to exclude from the benefit of the Act some injuries ordinarily described as 'accidents' which beyond all others merit favorable consideration in the interest of workmen and employers alike. A man injures himself by doing some stupid thing, and it is called an accident, and he gets the benefit of the insurance. It may even be his own fault and yet compensation is not to be disallowed unless the injury is attributable to 'serious and wilful misconduct' on his part. A man injures himself

---

**6.** Section 1 of the English Workmen's Compensation Act of 1897 provided that an employer would be liable to pay compensation "if in any employment to which this act applies personal injury by accident arising out of and in the course of the employment is caused to a workman."

suddenly and unexpectedly by throwing all his might and all his strength and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is told that his case is outside the Act because he exerted himself deliberately, and there was an entire lack of fortuitous element! I cannot think that that is right."

The above-described concept has been adopted throughout the United States. Professor Francis H. Bohlen, in his oft-cited article, *A Problem in the Drafting of Workmen's Compensation Acts*, 25 Harv. L.Rev. 328, 340, 343 (1912), stated:

"Since the case of *Fenton v. Thorley*, nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. It is no longer required that the causes external to the plaintiff himself, which contribute to bring about his injury, shall be in any way unusual; it is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing. * * * The element of unexpectedness, inherent in the word 'accident' is sufficiently supplied either if the incident itself is unusual, the act or conditions encountered abnormal, or if, though the act is usual and the conditions normal, it causes a harm unforeseen by him who suffers it." [7]

Only a small minority of other jurisdictions have adopted the "unusual activity" requirement with regard to continuing conditions in the workplace such as involved in *Slacum v. Jolley* and *Miskowiak v. Bethlehem Steel Co.*[8] With regard to

---

**7.** It is noteworthy that Professor Bohlen's article was cited with approval in *Victory Sparkler Co. v. Francks, supra*, 147 Md. at 381, 128 A. at 640.

**8.** The following cases are typical of those following the majority rule and holding that there is coverage for usual continuing conditions. *See,*

injuries of the type involved in the present case, namely injuries arising out of and in the course of employment and

e.g., *Diamelio v. Royal Castle*, 148 So.2d 8 (Fla.1962) (An epileptic seizure suffered by the claimant one hour after quitting work at the end of a hard day's work near the heat of the stoves was held compensable where symptoms of the impending incident appeared during work); *Kulig's Case*, 331 Mass. 524, 120 N.E.2d 757 (1954) (Tuberculosis aggravated by paint spraying held compensable); *Lane v. Horn & Hardart Baking Co.*, 261 Pa. 329, 333–334, 104 A. 615, 616 (1918) (Claimant's deceased husband was overcome by heat while working at a lunch counter on a hot August day. He died within two hours. In finding a compensable injury, the court reasoned: "[A] heat stroke, or heat prostration, are untoward, unexpected mishaps and accidental injuries within the meaning of the act. . . . It is immaterial whether the heat prostration is produced by artificial heat or by the natural heat of the sun, directly or through the heated atmosphere, if the exhaustion comes from heat in the course of employment." The court quoted *Ismay, Imrie & Co. v. Williamson*, [1908] Law Rep.App. Cas. 437, with approval: " 'What killed him was a heat stroke coming suddenly and unexpectedly upon him while at work. Such a stroke is an unusual effect of a known cause, often, no doubt, threatened, but generally averted by precautions, which experience, in this instance, had not taught. It was an unlooked for mishap in the course of his employment. In common language, it was a case of accidental death' "); *Sturkie v. Ballenger Corp.*, 268 S.C. 536, 235 S.E.2d 120 (1977) (The claimant worked for his employer in Puerto Rico as a cement-truck driver. As a result he was exposed to high humidity, high temperatures, fog, cement dust and short rain showers. He drove in an open cab, and so he was not protected from climatic changes. As a result of these constant changes he contracted emphysema. The court held that the injury was an accident, since the respondent was exposed to a greater risk than the general public); *Yellow Cab Co. v. Industrial Comm'n*, 210 Wis. 460, 466, 246 N.W. 689, 691 (1933) (Pneumonia contracted by taxi starter who changed a tire on cold day, got wet, changed his stockings, but could not get warm; "the exposure of [Claimant] to the germination of the pneumonia germs and the resulting pneumonia was substantially increased by reason of the nature of the services which he was obliged to render on the night in question").

For cases adopting the minority rule, and in accord with *Slacum* and *Miskowiak, see, e.g., Joyce v. Luse–Stevenson Co.*, 346 Mo. 58, 139 S.W.2d 918 (1940) (Claimant, a plasterer, was employed in putting in concrete water-proofing in a sub-basement, where it was necessary to get his feet and the lower portion of his legs wet. He contracted pneumonia from which he died. It was held not to be a compensable injury because the exposure was usual); *Slade v. Willis Hosiery Mills*, 209 N.C. 823, 184 S.E. 844 (1936) (Pneumonia of employee who encountered abrupt changes in temperature while carrying out ashes and while washing machines; the deceased's exposure was held to be no greater than that of general public); *George A. Fuller Co. v. Schacke*, 71 R.I. 322, 324–327, 45 A.2d 175, 176–178 (1945).

based on specific, sudden, unexpected and unintended events, the line of Maryland cases following *Atlantic Coast Shipping Co. v. Stasiak*, requiring "unusual activity," seems to constitute a minority of one. A review of decisions under the workers' compensation statutes of the other states, as well as the federal workers' compensation acts, indicates that no other jurisdictions presently require that an accidental injury of the type here involved arise out of "unusual activity" for there to be coverage.[9] .For a sampling of some of the cases, *see, e.g., Alabama Textile Products Corp. v. Grantham*, 263 Ala. 179, 184, 82 So.2d 204, 208 (1955) (The employee, who operated a sewing machine, lifted a bundle of fabric and injured her back, and the court, pointing out that the injury resulted from no "unusual strain or exertion," held that it was covered); *Phelps Dodge Corp. v. DeWitt*, 63 Ariz. 379, 381–389, 162 P.2d 605, 606–609 (1945) (The employee lifted a truck rim and tire, hurting his back. "There was nothing unusual in the manner of picking up the tire and rim," but the court held that the injury was covered, pointing out that "[i]t is a matter of common knowledge that when men lift heavy objects they are subject to strain and resulting injury"); *Bryant Stave & Heading Co. v. White*, 227 Ark. 147, 155, 296 S.W.2d 436, 441 (1956) (The employee suffered back strain from lifting and, in holding that the injury was covered, the court stated: "If we should adopt a requirement that the work or strain be unusual or extraordinary we would ... read into the law a requirement which greatly increases litigation to determine the elusory difference between usual and unusual strain or exertion. We would also, in effect, recast upon the disabled employee the burden of the old common law defense of assumed risk in

---

9. At one time Michigan also imposed this requirement, but the recent Michigan cases take the position that unusual activity is not required. *See, e.g., Farrington v. Total Petroleum, Inc.*, 442 Mich. 201, 217 n. 17, 501 N.W.2d 76, 83 n. 17 (1993); *Kostamo v. Marquette Iron Mining Co.*, 405 Mich. 105, 125, 274 N.W.2d 411, 419–420 (1979), quoting *Zaremba v. Chrysler Corp.*, 377 Mich. 226, 231, 139 N.W.2d 745, 748 (1966); *Holden v. Ford Motor Co.*, 226 Mich.App. 138, 147, 572 N.W.2d 268, 271 (1997); *Kain v. State*, 109 Mich.App. 290, 295, 311 N.W.2d 351, 353 (1981).

specific violation of the statute. This result is illogical and contrary to the spirit and purpose of the compensation law and the liberal construction that we have repeatedly resolved to give it"); *Lumbermen's Mut. Cas. Co. v. Industrial Acc. Com.*, 29 Cal.2d 492, 497, 175 P.2d 823, 826 (1946) ("[I]t is not required that the exertion or strain be necessarily unusual or other than that occurring in the normal course of the employment"); *Carroll v. Industrial Commission,* 69 Colo. 473, 475, 195 P. 1097, 1098 (1920) (" 'Since the case of *Fenton v. Thorley,* nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. \* \* \* It is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected"); *Jones v. Hamden,* 129 Conn. 532, 534, 29 A.2d 772, 773 (1942) ("an injury incurred by a workman while performing his work in the normal ordinary way may be an 'accidental injury' and compensable"); *Barone v. McCormick Transp. Co.,* 50 Del. 502, 505, 135 A.2d 140, 142 (1957) (An injury resulting from lifting cotton bales was covered even though the "plaintiff was not engaged in any unusual" employment); *Zerwal v. Caribbean Modes, Inc.,* 170 So.2d 840, 842 (Fla.1965) (The employee injured his back from lifting, and the court pointed out that "an internal failure brought about by exertion in the performance of the regular employment may be found to be an injury by accident without the necessity of showing that such injury was preceded by any unusual external incident"); *E. Baggot Co. v. Industrial Comm'n,* 290 Ill. 530, 532, 125 N.E. 254, 255 (1919) (The employee was injured as a result of lifting, and the injury was covered even though "[n]othing unusual happened"); *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969 (Ind.1986) (Unexpected injury or death @from the usual exertion or exposure of an employee's job is covered); *McManus Case,* 328 Mass. 171, 173, 102 N.E.2d 401, 402 (1951) (Claimant sustained a strain as he stooped over to pick up a hose that he was using in the course of his employment as a porter. "A back injury causally connected with employment is a compensable injury under the act ... and it need not necessarily result from unusual force

or exertion. * * * [A] strain caused merely by stooping down or bending over in the course of his employment entitles the employee to compensation for the resulting incapacity"); *Steffen v. Target Stores,* 517 N.W.2d 579, 580 (Minn.1994) (The injury is covered if it was "the sudden result of the routine performance of work activity"); *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781, 784–785 (Mo.1983) (The employee, a truck driver and warehouseman, was injured while delivering a refrigerator as a normal and usual part of his duties. While assisting another person in lifting the refrigerator up a stairwell, the weight of the refrigerator came back against the employee and he felt a sharp back pain. Rejecting its previous requirement that an unusual circumstance be present as a predicate for compensation, the court stated: "The [former] Missouri rule is in contrast with the overwhelming majority of states which hold that a strain is compensable even though the work being performed at the time of the injury was routine and the strain was not usual or abnormal); *State Industrial Ins. System v. Weaver,* 103 Nev. 196, 198, 734 P.2d 740, 741 (1987) ("[T]he absence of any obvious unusual occurrence does not preclude the existence of an injury" which is covered).

## V.

A particular rule of statutory construction, which is reflected in the Workers' Compensation Act itself, is applicable to this case. We have frequently repeated and applied the statutory mandate that "[t]he Workers' Compensation Act . . . should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant." *Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–762 (1995), quoting *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 629, 569 A.2d 697, 700 (1990) (internal quotation marks omitted). *See* Maryland Code (1991, 1999 Repl.Vol.), § 9–102 of the Labor and Employment Article.

In fact, the broad scope of the term "accidental personal injury" set forth in *Victory Sparkler Co. v. Francks, supra,* 147 Md. at 382, 128 A. at 640, was in part based upon the statutory mandate that the act be liberally construed in favor of coverage. *See also, e.g., Ametek, Inc. v. O'Connor,* 364 Md. 143, 154, 771 A.2d 1072, 1079 (2001); *Martin v. Beverage Capital Corp.,* 353 Md. 388, 400, 726 A.2d 728, 734 (1999); *Mayor of Baltimore v. Schwing,* 351 Md. 178, 204, 717 A.2d 919, 932 (1998); *Para v. Richards Group of Wash. Ltd. Partnership,* 339 Md. 241, 251, 661 A.2d 737, 742 (1995); *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 467, 620 A.2d 340, 342 (1993); *Alitalia Linee Aeree Italiane v. Tornillo, supra,* 329 Md. at 48, 617 A.2d at 576; *Inner Harbor Warehouse, Inc. v. Myers,* 321 Md. 363, 378, 582 A.2d 1244, 1251 (1990); *Lovellette v. Baltimore,* 297 Md. 271, 282, 465 A.2d 1141, 1147 (1983); *Howard County Assoc. for Retarded Citizens, Inc. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980); *Subsequent Injury Fund v. Thomas,* 275 Md. 628, 635, 342 A.2d 671, 675 (1975); *Bethlehem–Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 425, 45 A.2d 79, 83 (1945); *Lisowsky v. White,* 177 Md. 377, 382, 9 A.2d 599, 601 (1939).

In *DeBusk v. Johns Hopkins,* 342 Md. 432, 677 A.2d 73 (1996), this Court explored the goals which the workers' compensation system was intended to achieve. We pointed out that the Act "was designed to provide employees with compensation for loss of earning capacity, regardless of fault, resulting from accidental injury . . . occurring in the course of employment." *DeBusk,* 342 Md. at 437, 677 A.2d at 75. Referring to the balance that the Act strikes between the competing interests of the employee and employer, this Court stated (342 Md. at 438, 677 A.2d at 76):

"Employees who follow the procedural rules of the Act and can prove they were injured while working can almost certainly recover compensation to prevent undue hardships caused by loss of wages and medical expenses. Employers who purchase workers' compensation insurance and otherwise comply with the law of workers' compensation can likewise count on avoiding a negligence lawsuit."

The haphazard application of the judicially invented "unusual activity" requirement renders it impossible to meet the statutory goals set forth in the *DeBusk* opinion.

Ms. Harris, both as a matter of common sense and as a matter of law, suffered a covered accidental personal injury. This was recognized by the administrative agency charged with the duty of applying the statute. Thus, we reverse the judgments of both courts below and direct that the decision of the Workers' Compensation Commission be affirmed. In addition, we overrule the holdings in *Slacum v. Jolley, supra,* 153 Md. 343, 138 A. 244; *Miskowiak v. Bethlehem Steel Co., supra,* 156 Md. 690, 145 A. 199; *Atlantic Coast Shipping Co. v. Stasiak, supra,* 158 Md. 349, 148 A. 452, and similar holdings.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE WORKERS' COMPENSATION COMMISSION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*